526 So.2d 1268 (1988)
STATE of Louisiana, Plaintiff-Appellee,
v.
Kenneth GRAY, Defendant-Appellant.
No. CR86-875.
Court of Appeal of Louisiana, Third Circuit.
April 8, 1988.
*1269 Ronald Ware, Public Defenders Office, Lake Charles, for defendant-appellant.
Jerry G. Jones, Dist. Atty., Cameron, for plaintiff-appellee.
Before GUIDRY, DOUCET and KNOLL, JJ.
KNOLL, Judge.
Defendant, Kenneth Gray, was indicted for second-degree murder of his wife, Lou Ann Gray, a violation of LSA-R.S. 14:30.1. He was tried before a 12 member jury and found guilty as charged. He was sentenced to the mandatory term of life imprisonment at hard labor, without benefit of parole, probation, or suspension of sentence. He appealed, urging the following ten assignments of error: 1) the trial court erred in failing to grant defendant's motion to recuse the District Attorney's Office for the 38th Judicial District; 2) the trial court erred in failing to grant defendant's motion for change of venue; 3) the trial court erred in failing to individually sequester prospective jurors during voir dire examination; 4) the trial court erred in admitting into evidence a .22 caliber rifle because its probative value outweighed its prejudice to defendant; 5) the trial court erred in admitting into evidence the typed statements of Shirley Gray and Monroe Gray, Jr.; 6) the trial court erred in admitting into evidence the State's diagram marked S-16 and S-17; 7) the trial court erred in accepting James Jerry Savoie as an expert in firearms; 8) the trial court erred in allowing Assistant District Attorney Jennifer J. Bercier to represent the State at defendant's motion to fix bond hearing; 9) the trial court erred in *1270 denying defendant's motion for a new trial; and, 10) the trial court erred in failing to grant defendant's motion to correct the transcripts.
Assignment of error eight is considered abandoned as defendant failed to brief this assignment. State v. Dewey, 408 So.2d 1255 (La.1982).

FACTS
Defendant, Kenneth Gray, 39 years of age had been separated from his wife, Lou Ann Gray, who was 26 years of age, for approximately two years prior to her death. They had 5 children: Toby, DOB: 11-14-76; Joey, DOB: 9-18-77; Jessica, DOB: 9-28-80; Kelley, DOB: 12-2-81, and Lacie, DOB: 4-14-83. On January 21, 1986, Lou Ann Gray was visiting her sister-in-law, Shirley Gray, wife of defendant's brother, Monroe Gray, Sr. She and the five children had eaten at Shirley Gray's house trailer that evening. Shirley and Monroe Gray, Sr., lived at the end of what is locally known as the School Board Road near Cameron, Cameron Parish, Louisiana.
On the same day, defendant was visiting his brother and sister-in-law, Leroy and Betty Gray, who lived next door to Monroe and Shirley Gray. Near dark, defendant sent his two sons, Joey and Toby, ages 8 and 9 respectively, to tell defendant's three minor daughters to come and visit with him. After their visit, all five children returned to the residence of Monroe Gray, Sr., followed by their father.
Defendant asked his two sons to tell their mother to come outside because he wanted to speak with her and give her some money. The victim initially refused, but eventually went outside through the back door to talk with defendant. After a few minutes, everyone at Leroy and Monroe Gray's houses heard what sounded like firecrackers exploding. Upon inspection by some of the family members, Lou Ann Gray's lifeless body was found partially under Monroe Gray, Sr.'s house trailer a few feet from the steps of the back door. She had 7 bullet wounds: 5 in the back; 1 in the shoulder and 1 in the buttocks. In addition, 2 bullet holes were found close to the back door. In tracing the bullet holes, deputies of the Cameron Parish Sheriff's Office found 1 projectile in the refrigerator door. They found as many as 11 spent cartridges scattered from 12 feet to 20 feet from the back door. The maximum amount of long rifle cartridges that this type of rifle could hold was 14. During the shooting, there were 10 family members inside the house trailer: defendant's 5 children; defendant's brother, Monroe Gray, Sr., and his wife, Shirley, and their 2 little children; and, Monroe Gray, Jr. Neither defendant nor defendant's car was present at the scene, but Monroe Gray, Sr. and his son, Monroe, Jr., said they saw taillights of a vehicle leaving the area.
Approximately one hour later, defendant, wet and muddy, went to the office of the dispatcher for Chromaloy Drilling Fluids, which was across the marsh from defendant's brothers' residences located on the Jetty Road in Cameron. When asked by the dispatcher, Sheryl Lynn Parks, the reason for his appearance, he replied that someone had been hurt and that the police were coming to pick him up.
Defendant then called from the dispatcher's office and spoke to Betty Gray. Defendant asked, "Is it over?", to which Betty Gray responded, "Yeah, it's over, Lou Ann's dead." He told Betty Gray to inform the police of his whereabouts and was arrested shortly thereafter at the dispatcher's office.
Defendant and Lou Ann Gray had been physically separated on several occasions, and at the time of the murder, the victim had instituted proceedings to obtain child support. Just days prior to the murder, defendant made known to several parties, including his brother, Leroy Gray, that he would see Lou Ann dead before he paid child support.
On January 20, 1986, defendant asked a friend, Larry Ellis, if he had a gun that he could purchase. Not being successful in procuring a gun from Ellis, defendant, on the same date, asked his nephew, Monroe Gray, Jr., for a gun and again was unsuccessful in securing one. That same day, defendant purchased a .22 caliber rifle and *1271 several boxes of ammunition from a store in Cameron.
During defendant's interrogation by the deputies, he admitted having talked to the victim outside his brother's home on the evening of the murder and remembers running through the marsh. The murder weapon was never found, but a box of unspent .22 caliber long rifle cartridges was found in defendant's automobile.

ASSIGNMENT OF ERROR ONE
In his first assignment of error, defendant contends that the trial court erred in not granting defendant's motion to recuse the District Attorney's Office. We disagree.
Defendant predicates his argument on the fact that Assistant District Attorneys Glen Alexander and Jennifer J. Bercier had considerable legal contacts with the victim in this case. The relationship between the Assistant District Attorneys and the victim was that Glen Alexander had co-signed a bank note for the victim for $200, which he eventually had to pay, and Jennifer Bercier had filed a petition for a legal separation on behalf of Lou Ann Gray against defendant three to four weeks prior to Mrs. Gray's death.
LSA-C.Cr.P. Art. 680(1) states:
"A district attorney shall be recused when he:
(1) Has a personal interest in the cause or grand jury proceeding which is in conflict with fair and impartial administration of justice;"
For the purposes of this article District Attorney includes Assistant District Attorneys as well. See comment (a) of LSA-C. Cr.P. Art. 680.
In an action to recuse a District Attorney, defendant bears the burden of showing by a preponderance of the evidence that the District Attorney has a personal interest in conflict with the fair and impartial administration of justice. State v. Vaccaro, 411 So.2d 415 (La.1982); State v. Marcal, 388 So.2d 656 (La.1980), certiorari denied, 451 U.S. 977, 101 S.Ct. 2300, 68 L.Ed.2d 834 (1981). As concerns Assistant District Attorney Alexander, we do not believe defendant has carried the requisite burden of proof. The mere fact that he paid a $200 note does not establish a personal interest for the purposes of LSA-C. Cr.P. Art. 680, at least not to the extent that it may interfere with fair justice and impartiality. Mr. Alexander testified at the time he co-signed the note he felt that he would eventually end up paying the note, but that this was of no important consequence. Therefore, we feel the trial judge was correct in not recusing Assistant District Attorney Alexander.
The trial judge felt it would better serve the ends of justice if Assistant District Attorney Bercier did not participate in this prosecution and so disqualified her. However, the recusal or disqualification of an Assistant District Attorney does not require the recusal of a District Attorney or his other assistants. State v. Brazile, 231 La. 90, 90 So.2d 789 (1956). Therefore, we find defendant's first assignment of error meritless.

ASSIGNMENT OF ERRORS TWO AND THREE
By this assignment, defendant contends the trial judge erred in denying his motions for a change of venue and for individual voir dire. He submits that due to pre-trial notoriety of his case and the number of people related to the alleged victim that live throughout Cameron Parish, he was unable to receive a fair and impartial trial. We disagree.
A motion for a change of venue is governed by LSA-C.Cr.P. Arts. 621, et seq. Article 622 states the grounds for granting a change of venue as follows:
"A change of venue shall be granted when the applicant proves that by reason of prejudice existing in the public mind or because of undue influence, or that for any other reason, a fair and impartial trial cannot be obtained in the parish where the prosecution is pending.
In deciding whether to grant a change of venue the court shall consider whether the prejudice, the influence, or the other *1272 reasons are such that they will affect the answers of jurors on the voir dire examination or the testimony of witnesses at the trial."
In urging a change of venue, an accused must establish that there exists such prejudice in the collective mind of the community that a fair trial is impossible. State v. Wilson, 467 So.2d 503 (La.1985). A mere showing of public knowledge of facts concerning the offense is insufficient to warrant a change of venue. A decision by a trial court concerning this issue is given wide discretion, which will not be disturbed on appeal absent an affirmative showing of error and abuse of that discretion. State v. Vaccaro, supra; State v. Adams, 394 So.2d 1204 (La.1981).
In State v. Bell, 315 So.2d 307 (La. 1975), the Louisiana Supreme Court discussed certain considerations which should be taken into account when determining whether or not to grant a motion for a change of venue. Such considerations are: 1) the nature of pre-trial publicity and the particular degree to which it has circulated in the community; 2) the connection of government officials with the release of the publicity; 3) the length of time between the dissemination of the publicity and the trial; 4) the severity and the notoriety of the offense; 5) the area from which the jury is to be drawn; 6) other events occurring in the community which either affect or reflect the attitude of the community or individual jurors toward the defendant; and, (7) any factors likely to affect the candor and veracity of the prospective jurors on voir dire.
In the present case, defendant, in his brief, refers us to the first supplemental record, which contains a portion of the voir dire examination. This testimony offers no evidence of any pre-trial publicity. It only shows that eleven prospective jurors were released for cause. A thorough examination of the record reveals no evidence that defendant sustained prejudice to the extent that he was unable to receive a fair and impartial trial. The trial judge's decision to deny defendant's motion for a change of venue was proper.
Both parties in this case were allowed individual questioning of prospective jurors in the presence of the others. Defendant contends that the trial judge committed error in not sequestering the prospective jurors during voir dire examination denying him a fair trial. We disagree.
Defendant has the burden of showing that the court abused its discretion in refusing to sequester the venire on voir dire. State v. David, 425 So.2d 1241 (La.1983); State v. Willie, 410 So.2d 1019 (La.1982); State v. Monroe, 397 So.2d 1258 (La.1981). Defendant has not met the requisite burden in that he has failed to point out any specifics in the record that would justify granting a motion to sequester prospective jurors.
There is no provision in our law that either prohibits or requires the sequestration of prospective jurors for an individual voir dire, although LSA-C.Cr.P. Art. 784 provides that the court will determine how it will choose a panel and will be given wide discretion in doing so. State v. Kirkpatrick, 443 So.2d 546 (La.1983). The Louisiana Supreme Court has previously held that the trial judge's refusal to insulate prospective jurors from the voir dire examination of other prospective jurors does not, in the absence of special circumstances, deny a defendant a fair trial. State v. Groves, 311 So.2d 230 (La.1975); State v. Robinson, 302 So.2d 270 (La.1974). As there are no special circumstances alleged by defendant, the trial judge was correct in denying defendant's motion. Thus, we find no merit to this assignment.

ASSIGNMENT OF ERROR FOUR
Defendant contends that the trial court erred in admitting into evidence a .22 caliber rifle because its probative value was outweighed by its prejudicial effect.
It is error to introduce into evidence weapons which are allegedly similar to the ones used in the murder. State v. Manieri, 378 So.2d 931 (La.1979). There is a natural tendency for jurors to equate some connexity with the weapon being introduced into evidence at trial and the *1273 weapon that was actually used in the slaying. However, reversible error did not occur in that it was made clear to the jury that the weapon introduced was not the actual murder weapon, but was an identical rifle to the one purchased by defendant on the day prior to the murder from Dyson Lumber and Supply. There was no attempt to suggest that it was the murder weapon. Thus, little possibility existed that the jurors, without proof, would prejudicially associate the defendant with the weapon. State v. Davis, 336 So.2d 805 (La.1976). Therefore, although it was error to admit the .22 caliber rifle into evidence, we find it to be harmless error. State v. Manieri, supra. As such, defendant's assignment of error is not grounds for reversal.

ASSIGNMENT OF ERROR FIVE
Defendant contends that the trial court erred in allowing the State to impeach the testimony of two of its own witnesses: Shirley Gray, defendant's sister-in-law, and Monroe Gray, Jr., defendant's nephew. Both witnesses testified in direct conflict with their earlier statements they had given to the police. The State pleaded surprise and availed itself of LSA-R.S. 15:487, which provides:
"No one can impeach his own witness, unless he have been taken by surprise by the testimony of such witness, or unless the witness show hostility toward him, and, even then, the impeachment must be limited to evidence of prior contradictory statements."
Both witnesses had given statements to the police in which they said they had seen defendant's car leaving the murder scene. However, at trial they testified they did not see defendant's car leaving the murder scene.
By recanting their earlier statement to the Sheriff's deputies, Shirley and Monroe Gray, Jr. testified upon a material matter against the party introducing them and in favor of the other side. LSA-R.S. 15:488. Under LSA-R.S. 15:487, the prosecution could properly argue surprise, if not hostility arising out of the family relationship between the witnesses and defendant. See State v. Brown, 414 So.2d 689 (La.1982). Therefore, we find the trial court did not err in allowing into evidence the statements of Shirley and Monroe Gray, Jr. for impeachment purposes.

ASSIGNMENT OF ERROR SIX
Defendant contends that the trial court erred in admitting into evidence the State's diagrams marked S-16 and S-17. He argues Exhibit S-16 had no real probative value, was repetitive and only served to inflame the jury. He also argues that Exhibit S-17 had no probative value as well.
In the course of the trial the prosecution offered into evidence a diagram of the scene of the murder, marked State's Exhibit S-16. The following colloquy took place when the State offered the exhibit into evidence.
"MR. JONES: In connection with his testimony I offer exhibit S-16.
THE COURT: Do you have any questions to ask the witness regarding this exhibit?
MR. WARE: Yes. Your Honor, I'd like to make an objection prior to questioning.
THE COURT: You'd like to make an objection to what?
MR. WARE: To ... May we approach the bench?
THE COURT: Approach the bench, please."
After defense counsel traversed the witness, Exhibit S-16 was admitted into evidence without further objection. Defense counsel also failed to state what grounds he based his prior objection on. LSA-C. Cr.P. Art. 841 states in pertinent part:
"An irregularity or error cannot be availed of after verdict unless it was objected to at the time of occurrence.... It is sufficient that a party, at the time the ruling or order of the court is made or sought, makes known to the court the action which he desires the court to take, or of his objections to the action of the court, and the grounds therefor."
*1274 It is well settled that defendant must state the basis for his objection when he makes it so that the trial judge has an opportunity to rule on it and prevent or cure an error. An objection stating no basis presents nothing for this court to review. State v. Lewis, 353 So.2d 703 (La. 1977); State v. Burnette, 337 So.2d 1096 (La.1976); State v. Sosa, 328 So.2d 889 (La.1976). In the present case, defendant failed to state sufficient grounds on which to base his objection. Therefore, the trial court did not err in admitting into evidence Exhibit S-16.
As concerns the admissibility of Exhibit S-17, defense counsel failed to make a timely objection to the admissibility of this evidence. It is imperative that an objection be lodged at the time of the occurrence in order for the irregularity or error to be reviewable on appeal. In the absence of a contemporaneous objection, any error related to the admission of evidence is not reviewable on appeal. LSA-C. Cr.P. Art. 841; State v. Wright, 410 So.2d 1092 (La.1982); State v. Guidry, 461 So.2d 489 (La.App. 3rd Cir.1984), writ denied, 481 So.2d 1329 (La.1986). Since defense counsel failed to make a timely objection concerning Exhibit S-17, this evidence is not reviewable on appeal.

ASSIGNMENT OF ERROR SEVEN
Defendant argues that the trial judge erred in accepting James Jerry Savoie as an expert in firearms. We disagree.
LSA-R.S. 15:466 provides:
"The test of the competency of an expert is his knowledge of the subject about which he is called upon to express an opinion, and before any witness can give evidence as an expert his competency so to testify must have been established to the satisfaction of the court."
Competency of an expert witness is a question of fact within the sound discretion of the trial judge. State v. Watson, 449 So.2d 1321 (La.1984), certiorari denied, 469 U.S. 1181, 105 S.Ct. 939, 83 L.Ed.2d 952 (1985); State v. Coleman, 406 So.2d 563 (La.1981), State v. Lambert, 475 So.2d 791 (La.App. 3rd Cir.1985), writ denied, 481 So.2d 1345 (La.1986). A trial judge's rulings will not be disturbed in the absence of manifest error. State v. Stucke, 419 So.2d 939 (La. 1982); State v. Trosclair, 443 So.2d 1098 (La.1983).
After a careful examination of the record, we find the trial court did not commit manifest error in accepting Mr. Savoie as an expert gunsmith. He testified that he had been a gunsmith since 1956 or 1957. He had been an armament specialist for four years in the United States Air Force and had made repairs on thousands of guns of all types, including shotguns, pistols and rifles. We find this experience, combined with the amount of time Mr. Savoie has been repairing guns, qualified him as an expert gunsmith and gave him a unique understanding of the mechanics of the particular firearm in question. Therefore, defendant's seventh assignment of error is without merit.

ASSIGNMENT OF ERROR NINE
Defendant assigns error to the trial court's refusal to grant a new trial, arguing that the evidence he presented at the hearing on the motion for new trial showed that Joey Gray, defendant's son, committed perjury in testifying: 1) that he saw defendant get what appeared to be a gun from the trunk of his car, and 2) that defendant had the gun behind his back while he was talking to his wife.
Recantations of trial testimony should be looked upon with the utmost suspicion. LSA-C.Cr.P. Art. 851; State v. Tyler, 342 So.2d 574 (La.1977). A recantation at a new trial is a confession to perjury which destroys the credibility of the witness. State v. Linkletter, 345 So.2d 452 (La.1977).
One of the requirements for granting a new trial on the grounds of newly discovered evidence is that if the alleged newly discovered evidence had been introduced at the trial it would probably have changed the verdict. Absent a clear abuse of discretion by the trial court, its ruling will not be disturbed. State v. Barton, 181 La. *1275 262, 159 So. 383 (1935); State v. Corey, 339 So.2d 804 (La.1976).
After a thorough perusal of the record, we find that the trial court did not abuse its discretion in denying the motion for new trial. The record shows the trial court conscientiously observed the testimony of the witnesses and carefully weighed all the evidence introduced at the hearing. In denying defendant's motion for new trial, the learned trial judge stated:
"THE COURT: The evidence today demonstrates that the combination of the child's age, his impressionable nature, his status as a defacto orphan, and the other things surrounding his home situation, or lack of a home situation, make him very susceptible to coercion. The letter from the defendant, or the mover in this case for a new trial, is obviously coercive. That type of correspondence or communication would adequately explain the mover's first offering, the letter from the child, as to why the child would try to curry favor with his father and say that his testimony was incorrect; because that's what he thought his father wanted to hear. Although his testimony does vary somewhat from his trial testimony, as the young little fellow tried to recall the facts, they began to fall into place closer and closer to what he did testify to, convincing me that it's closer and closer to what he actually saw, observed. For that reason alone, I would feel that there's no basis for a new trial. However, I would like to add that this particular trial judge presided over that case, and there was ample evidence outside of the contested testimony of this little fellow to have convinced a jury beyond a reasonable doubt of the defendant's guilt. And the testimony of Joey to the fact that he saw the father standing there with a gun behind his back simply moved it from the realm of beyond a reasonable doubt to almost beyond any doubt. And that was just additional evidence helpful to the State but not vital to the conviction. It's absence would not have affected the outcome of that trial. And for that reason, the new trial is denied."
We agree with the learned trial judge that even without the testimony given by Joey Gray, the evidence adduced at trial was overwhelmingly against defendant. It cannot be supposed that defendant has suffered an injustice in his conviction. The trial court properly denied defendant's motion for a new trial. This assignment of error is without merit.

ASSIGNMENT OF ERROR TEN
Defendant contends that the trial court erred in not granting a motion to correct the transcript. We disagree.
After a careful and thorough examination of all transcripts involving defendant's second-degree murder trial, including the testimony given on voir dire examination, as well as the transcript of the hearing on the motion for a new trial, we find no errors. Moreover, defendant fails to point us to any area of the transcripts which would tend to support this assignment of error.
For the foregoing reasons, the conviction and sentence of defendant are affirmed.
AFFIRMED.