561 So.2d 808 (1990)
STATE of Louisiana, Appellee,
v.
James Robert WEST, Appellant.
No. 21428-KA.
Court of Appeal of Louisiana, Second Circuit.
May 9, 1990.
*809 Indigent Defender Board by Richard E. Hiller, Shreveport, for appellant.
William J. Guste, Jr., Atty. Gen., Baton Rouge, Paul J. Carmouche, Dist. Atty., Stan Lockard & Rebecca Irwin, Asst. Dist. Attys., Shreveport, for appellee.
Before HALL, C.J., and JONES and HIGHTOWER, JJ.
HALL, Chief Judge.
Defendant, James Robert West, was charged by bill of information with two counts of armed robbery, in violation of LSA-R.S. 14:64. He was tried before a jury of 12 persons and was unanimously found guilty on both counts. He was sentenced to 50 years imprisonment at hard labor without benefit of parole, probation, or suspension of sentence on both counts, with the sentences to run concurrently. Defendant appealed with 31 assignments of error of which only four were briefed. Finding no merit to defendant's briefed assignments of error, we affirm.
Near midnight on the 31st of January, 1989, Mr. Thomas Crichton, III and Ms. Johnette Querbes returned to Ms. Querbes' home from an evening of dining and dancing. Ms. Querbes opened her garage door by remote control and Mr. Crichton drove his vehicle into the garage. As Mr. Crichton exited his vehicle, he was confronted by an armed intruder who ordered him to place his hands against the garage wall. When Ms. Querbes alighted from the vehicle, the intruder instructed her to place her fur coat and handbag on the trunk of the automobile and to deactivate the alarm system to her home. Ms. Querbes complied with the intruder's instructions and she, Mr. Crichton, and the intruder entered her home.
Once inside, the intruder instructed Ms. Querbes and Mr. Crichton to place certain valuables on a table. Included among the valuables were credit cards, Mr. Crichton's Rolex watch and jewelry.
The intruder then ordered the victims into a bedroom where he tied their hands and feet with extension cords and electrical cords from lamps and an electric blanket. He then ransacked the house. During this ordeal, Ms. Querbes was untied and instructed to lead the robber around the house helping him to gather valuables. After about an hour and a half, Ms. Querbes was again bound and the intruder left.
Mr. Crichton was able to free himself and Ms. Querbes, and he called the police immediately. The next day, he and Ms. Querbes went to the police station in hopes of constructing a composite drawing of the intruder. Both of the victims separately constructed composites which were distributed among law enforcement personnel.
*810 Later, a Bossier City police officer viewed the composites and noted that one of them resembled the defendant. A "mug shot" of the defendant was placed in a photographic lineup, and the lineup was separately shown to the victims. Both victims picked the defendant's picture out of the photographic lineup, with Ms. Querbes feeling 70 percent sure the pictured man was the intruder, and Mr. Crichton being 80 percent sure the pictured man was the intruder.
Subsequently, Bossier police had occasion to investigate a disturbance at a residence. Upon arriving at the residence, they learned that the parties causing the disturbance, one of which was the defendant, had fled the scene on foot, having abandoned the automobile in which they had arrived. Bossier police determined that the vehicle was stolen and obtained the owner's consent to search the vehicle. Credit cards belonging to Mr. Crichton were found in a bag located in the trunk of the vehicle. A warrant was issued for the defendant's arrest and he was apprehended in Blanchard, Louisiana.
Mr. Crichton was informed by his son, Scott Crichton, a part-time assistant district attorney, of a preliminary examination at which the defendant was to be present. Mr. Crichton and Ms. Querbes attended the preliminary examination. As the defendant entered the courtroom, they both immediately recognized the defendant as the robber.

ASSIGNMENTS OF ERROR
Defendant initially raised 31 assignments of error. As he has briefed only four assignments of error, the others are considered abandoned. State v. Williams, 338 So.2d 672 (La.1976); State v. Domingue, 298 So.2d 723 (La.1974). Defendant, in one of his assignments of error, requests that we review the record for errors patent. Finding none, we conclude that this assignment of error is without merit.
By his other assignments of error, the defendant contends that the trial judge erred in refusing to recuse the district attorney, that the trial judge erred in the admission of the photographic lineup into evidence, and that the trial judge imposed an unconstitutionally excessive sentence.

RECUSAL OF THE DISTRICT ATTORNEY
LSA-C.Cr.P. Art. 680 provides:
"A district attorney shall be recused when he:
(1) Has a personal interest in the cause or grand jury proceeding which is in conflict with fair and impartial administration of justice;
(2) Is related to the party accused or to the party injured, or to the spouse of the accused or party injured, or to a party who is a focus of a grand jury investigation, to such an extent that it may appreciably influence him in the performance of the duties of his office ..."
The recusal or disqualification of an assistant district attorney does not require the recusal of the district attorney or his other assistants. State v. Edwards, 420 So.2d 663 (La.1982); State v. Brazile, 231 La. 90, 90 So.2d 789 (1956). In an action to recuse the district attorney, the defendant bears the burden of proving by a preponderance of the evidence that the district attorney has a personal interest in conflict with the fair and impartial administration of justice. State v. Marcal, 388 So.2d 656 (La.1980); State v. Gray, 526 So.2d 1268 (La.App.3d Cir.1988), writ denied 531 So.2d 468 (La.1988).
The defendant asserts that the trial court erred in refusing to recuse the district attorney because the district attorney was "biased" and "bound and determined to get a conviction." His argument is based on the fact that one of the victims, Mr. Crichton, is related to an assistant district attorney, Scott Crichton. Further, he asserts that Scott Crichton worked on other cases with assistant district attorney A. Marty Stroud, at one time the chief prosecutor in this matter.
Although it is abundantly clear that Scott Crichton could not participate in the prosecution of this defendant, it is equally clear that he did not participate in the *811 prosecution. He testified that he was interested in the case only because his father had been a victim. He did not discuss the case with anyone in the district attorney's office. He stated unequivocally that he did not encourage A. Marty Stroud to pursue the case more diligently than other cases. He admitted that he discussed the case with his father, but only insofar as to inform his father about certain procedures of the criminal justice system and elements of the offense.
In short, the defendant did not present any evidence which tends to establish that the entire district attorney's office should have been recused in this case. The mere presence of a victim's relative in the district attorney's office does not support a finding of recusal. Defendant contends that bias was shown because the district attorney pursued a second trial after the first resulted in a hung jury. Even though the district attorney pursued a second trial, this fact does not amount to a showing of a personal interest such that the fair and impartial administration of justice was threatened. Therefore, this assignment of error is without merit.

IDENTIFICATION
Defendant contends that the trial judge erred in allowing a photographic lineup into evidence. He asserts that the lineup was unduly suggestive and prejudicial because the identification was tainted by an improper identification procedure, i.e. the viewing of the defendant at the preliminary examination by the victims. Defendant does not argue that the photographs contained in the photographic lineup or the method by which the police conducted the lineup is suggestive or prejudicial. Instead, he contends that the victims were only 70 to 80 percent sure that he was the robber after viewing the lineup. The identification was not solidified until the victims viewed the defendant at the preliminary examination.
In attempting to suppress an identification, the defendant first must show that the identification procedure was suggestive. State v. Mims, 501 So.2d 962 (La. App. 2d Cir.1987). The photographic lineup was not suggestive. The photographs in the lineup were taken from a file which contained photographs of individuals with similar characteristics. The victims were shown the photographs without any indication of which, if any, individual was the intruder. Both victims picked the defendant's photograph from the lineup without any suggestion from the police. The later identification was not conducted by the state. The victims voluntarily attended the hearing to solidify in their own minds whether the defendant was indeed the intruder.
However, to the extent that the defendant may be attempting by this assignment of error to assert that the identification at the preliminary examination was improper, we now turn to that issue. The state did not formally arrange for or instruct the victims to attend the preliminary examination. No subpoena was issued commanding the victims to attend the hearing. Both victims went to the hearing voluntarily. Therefore, it is difficult to categorize the viewing of the defendant at the preliminary examination as an "identification procedure."
Assuming for purposes of this opinion that the viewing of the defendant was an identification procedure, we must further resolve the question of whether this identification deprived the defendant of due process of law.
Defendant asserts that he was led into the courtroom along with two black men. Therefore, he concludes that the victims had no choice but to identify him as the intruder since he was the only white male in court as a defendant.
Even if the viewing of the defendant in this manner was suggestive, we must decide under the "totality of the circumstances" whether the identification was reliable, State v. Cotton, 511 So.2d 1207 (La.App. 2d Cir.1987), for a substantial likelihood of misidentification is what deprives the defendant of due process. Neil v. Biggers, 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972). The factors to be considered in *812 determining the reliability of an identification are:
(1) The witness's opportunity to view the suspect at the time the crime was committed;
(2) The degree of attention paid by the witness during the commission of the crime;
(3) The accuracy of any prior description;
(4) The level of the witness's certainty displayed at the time of the identification; and
(5) The length of time elapsed between the crime and identification. Neil v. Biggers, supra; Manson v. Brathwaite, 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977).
Both witnesses were able to view the intruder in excess of an hour's time during the commission of the crime. The house was well lighted and the intruder made no attempt to conceal his identity. The witnesses' attention throughout the ordeal was riveted on the intruder as he was wielding a firearm. The description of the intruder given by both witnesses resulted in a composite drawing which was immediately recognized by a Bossier police officer as resembling the defendant. After picking defendant's photograph from the photographic lineup, both witnesses expressed a high degree of certainty that the photograph depicted their robber. The subsequent "in-the-flesh" viewing made both victims absolutely certain that the defendant was the robber. Though there were several months between the commission of the crime and the preliminary examination, the victims identified the defendant in the photographic lineup only two weeks after the commission of the crime. All of these factors indicate that there is a high degree of reliability in this identification.
Reliability is the linchpin in determining the admissibility of identification testimony. Neil v. Biggers, supra. Under the totality of the circumstances of this case, neither the photographic lineup nor the viewing of the defendant at the preliminary examination was so suggestive and conducive to mistaken identification as to deprive the defendant of due process of law. Therefore, this assignment of error is without merit.

SENTENCE
Finally, defendant contends that his 50-year sentences at hard labor without benefit of parole, probation, or suspension of sentence are unconstitutionally excessive. Defendant does not take issue with the trial court's compliance with LSA-C. Cr.P. Art. 894.1.
In determining whether a sentence is unconstitutionally violative of LSA-Const. Art. 1, § 20 (1974), we review whether the sentence is grossly out of proportion to the seriousness of the offense, or nothing more than a purposeless and needless infliction of pain and suffering. State v. Bonanno, 384 So.2d 355 (La.1980). A sentence is grossly disproportionate to the seriousness of the offense when it can be said that it shocks the sense of justice. State v. Hogan, 480 So.2d 288 (La.1985).
Defendant's primary argument is that the trial court did not give adequate consideration to the fact that he is a first-time felony offender. When imposing a sentence, it is appropriate for the trial judge to consider not only past convictions but all prior criminal activity. State v. Palmer, 448 So.2d 765 (La.App. 2d Cir. 1984); writ denied 452 So.2d 695 (La.1984). Though this is defendant's first felony conviction, he is by no means a stranger to criminal activity. He himself candidly admitted to his involvement in an assortment of crimes, including drug dealing, gun running and prostitution. Furthermore, defendant has been arrested in Texas under an alias, James Williams, prior to this conviction. His prior convictions included a DWI conviction and a possession of marijuana conviction. He has been arrested approximately 10 times in the past. Defendant confessed to having a significant involvement in the drug world.
Finally, the offenses for which defendant was convicted are among the most serious crimes in that they involve the threat to human life. Even though the defendant did not harm his victims, he held them at *813 gun point for one and a half hours and bound them with electrical cords. Both victims stated that it was a terrorizing experience.
The sentences imposed are well within the statutory limits, being approximately one-half of the maximum sentence imposable. The trial judge did not abuse his much discretion in imposing the sentences, nor do the sentences shock our sense of justice. Therefore, this assignment of error lacks merit.
For the foregoing reasons, the convictions and sentences of the defendant are affirmed.
AFFIRMED.