liDREW, J.
After a trial by jury, defendants Reginald W. Williams and Roy Lee Hughes were each convicted of armed robbery and second degree kidnapping and subsequently adjudicated an habitual offender. As a second felony offender, Williams was sentenced to 49 years at hard labor on the armed robbery conviction. He was also sentenced to 30 years on the second degree kidnapping conviction, with the sentences to run concurrently. Hughes, a fourth felony offender, was sentenced to life imprisonment for the armed robbery conviction. For the second degree kidnapping conviction, he was sentenced to 30 years, with the sentences to run concur *1260 rently. Each defendant now appeals his convictions, habitual offender adjudication, and sentences. For the reasons explained herein, the convictions, habitual offender adjudications, and sentences are affirmed.

FACTS

The victim, Loreco Douglas, testified that at about noon on January 11, 1997, he was driving his car on Union Street in Shreveport when a young man Douglas identified as Hughes flagged him down.. Douglas recognized Hughes as someone he had seen around the neighborhood. After Douglas pulled over, Hughes began talking with him about several alleged mutual school mates and asked Douglas for a ride. Douglas agreed and Hughes got into the front passenger seat. At trial, Douglas identified defendant Roy Hughes as that young man.
Douglas testified that he drove Hughes to a house located on Pine Tree and parked in the driveway. Hughes said he would be back in a minute and went into the house. Douglas waited in the car for about five or ten minutes. A man, later identified as Reginald Williams, walked by Douglas’ car and entered the house. Hughes then came out and invited Douglas into the house.
Douglas stated that shortly after he entered the house, Williams approached him armed with a black semi-automatic handgun and Hughes produced a chrome 12semi-automatic handgun. Douglas was instructed not to resist and to lie down on the floor. Hughes and Williams held Douglas at gunpoint while they stole his money, his pager, his jacket, and his tennis shoes. Douglas was blindfolded and gagged. His hands were tied behind his back and his feet were tied together. Douglas was then carried out to his car and placed in the trunk. According to Douglas’ testimony, he remained in the trunk of the moving car for about 35 minutes. During this time, Douglas managed to untie himself. He found a wrench in the trunk and used it to force open the trunk while the car was traveling on Southern. Douglas testified that he jumped out of the moving car, tearing his clothing and injuring his feet, knees and elbows. He stated that some men in a U-Haul who saw him jump out of the trunk stopped to help and gave him a ride to Mall St. Vincent. Douglas located mall security personnel, who then contacted the police.
Officer P.D. Vines of the Shreveport Police Department testified that at approximately 1:35 p.m. on January 11, 1997, he responded to a call from Mall St. Vincent, reporting a car jacking. When Officer Vines arrived at the mall, he encountered Loreco Douglas, who reported that he had just been the victim of a car jacking and armed robbery. Officer Vines observed that Douglas was not wearing shoes and that his pants and shirt were torn. Officer Vines also noticed that Douglas was bleeding from the elbows and knees. The Shreveport Fire Department was called and rendered medical treatment to Douglas.
According to testimony at trial, on Monday, January 13, 1997, Douglas met with Detective Tom Oster of the Shreveport Police Department. During the interview, Douglas gave descriptions of the men who robbed him and also told Det. Oster that one of the attackers had used the nickname “Rollo” during the commission of the robbery. Det. Oster testified that, based on information he | ¡^received from Douglas during the interview, he constructed a photographic line-up, which included a picture of Reginald Williams. That same day, Douglas viewed the line-up and positively identified Reginald Williams as one of the men who robbed him.
Det. Oster testified that the first suspect identified was not the one referred to during the robbery as “Rollo,” so he continued his efforts to determine the real name of that individual. The detective stated that on January 15, 1997, Douglas informed him that he had asked around his neighborhood and discovered that a person named Roy Hughes was known by the nickname of “Rollo.” That same day, Ost *1261 er constructed a photographic hne-up which included a picture of Roy Hughes. Douglas viewed the line-up and positively identified the photograph of Roy Hughes. Douglas indicated that Hughes was the man to whom he gave a ride and who later robbed him. Later on January 15, 1997, Douglas’s car was recovered from a Circle K store near Southern. The car was dusted for prints, but no usable prints were obtained.
On January 29, 1997, Williams was arrested. Det. Oster testified that he interviewed Williams the following day. After being informed of the date of the offense, the nature of the offense, and his Miranda rights, Williams stated several times that on January 11, 1997, he was at home until two o’clock in the afternoon. Det. Oster further testified that, when he asked Williams what day of the week January 11, 1997 was, Williams replied that he did not know.
Hughes was not located for some time. After Hughes was taken into custody in Dallas, Texas, Det. Oster attempted to interview him on May 30,1997. Hughes was advised of his Miranda rights and chose not to make a statement.
Williams was initially charged with armed robbery by bill of information on March 10, 1997. On September 22, 1997, an amended bill of information was | ¿filed charging both Williams and Hughes with armed robbery and second degree kidnapping.
At the defendants’ trial, Douglas, Officer Vines, and Det. Oster testified as previously stated. Each defendant called one witness. Williams’ sister, Dorothy White, testified that she saw Williams in the backyard of their house around two o’clock in the afternoon of January 11, 1997. She further stated that she had been asleep in bed until sometime after 1:20 p.m., so she had no knowledge of Williams’ whereabouts earlier that day. Hughes’ brother, Derrick Whitaker, testified on his behalf. Whitaker testified that Hughes was not in Shreveport on January 11, 1997, because he was living in Dallas at the time. On cross-examination, Whitaker admitted to having a conviction for distribution of a Schedule Two controlled dangerous substance. The jury found Williams and Hughes guilty as charged, convicting each of armed robbery and second degree kidnapping by a vote of 10-2 on each charge.
On July 27, 1998, an habitual offender bill was filed against Hughes alleging that he was a fourth felony offender. On July 30, 1998, an habitual offender bill was filed against Williams alleging him to be a second felony offender. Each was adjudicated as such.

LAW AND DISCUSSION

Sufficiency of the Evidence for the Convictions

Assignment of Error # 1: The evidence herein is legally insufficient to sustain Appellant’s conviction. (Williams)
Assignment of Error # 3: The Honorable Trial Court erred in denying Appellant’s pro se Motion for New Trial. (Williams)
Assignment of Error #2: The evidence presented at trial was insufficient to support the guilty verdicts. (Hughes)
When both sufficiency of the evidence and trial errors are raised on appeal, the reviewing court should first determine the sufficiency of the evidence. State v. Hearold, 603 So.2d 731 (La.1992). The proper standard for appellate review for a sufficiency of the evidence claim is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proved beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Bellamy, 599 So.2d 326 (La.App. 2d Cir.), writ denied, 605 So.2d 1089 (1992).
The Jackson standard is applicable in cases involving both direct and circumstantial evidence. The facts established by *1262 the direct evidence and inferred from the circumstances established by that evidence must be sufficient for a rational trier of fact to conclude beyond a reasonable doubt that defendant was guilty of every essential element of the crime. State v. Sutton, 436 So.2d 471 (La.1983); State v. Owens, 30,903 (La.App.2d Cir.9/25/98), 719 So.2d 610, writ denied, 98-2723 (La.2/5/99), 737 So.2d 747.
Armed Robbery: La. R.S. 14:64 provides, in pertinent part:
A. Armed Robbery is the taking of anything of value belonging to another from the person of another or that is in the immediate control of another, by use of force or intimidation, while armed with a dangerous weapon.
Second Degree Kidnapping: La. R.S. 14:44.1 provides, in pertinent part:
A. Second Degree Kidnapping is the doing of any of the- acts listed in Subsection B wherein the victim is:
(5) Imprisoned or kidnapped when the offender is armed with a dangerous weapon or leads the victim to reasonably believe he is armed with a dangerous weapon.
B. For the purposes of his Section, kidnapping is:
(1) The forcible seizing and carrying of any person from one place to another....
As previously stated, the state presented at trial the testimony of Douglas. Douglas gave Hughes a ride to a house located on Pine Tree. Douglas saw |fiWilliams enter the house. Hughes invited Douglas into the house. When Douglas went inside the house, Williams and Hughes robbed him at gunpoint of his money, pager, jacket and tennis shoes. Bound, blindfolded and gagged, Douglas was placed in the trunk of his car and driven from Pine Street until he managed to escape by jumping from the trunk of the moving vehicle on Southern.
Within a few days of the robbery and kidnapping, Douglas positively identified both Williams and Hughes in photographic line-ups. Douglas testified at trial that he had seen both Williams and Hughes on occasion before the day they robbed and kidnapped him. At trial, Douglas again positively identified Williams and Hughes as the men who robbed and kidnapped him.
Williams’ and Hughes’ arguments that Douglas’s testimony was uncorroborated and insufficient to support their convictions are without merit. In the absence of internal contradiction or irreconcilable conflict with physical evidence, one witness’s testimony, if believed by the trier of fact, is sufficient support for a requisite factual conclusion. State v. Baker, 28,152 (La.App.2d Cir.5/8/96), 674 So.2d 1108, writ denied, 96-1909 (La.12/6/96), 684 So.2d 925. The jury obviously found Douglas’s testimony credible that the defendants had robbed and kidnapped him at gun point. We find no internal contradiction or conflict with physical evidence that would make Douglas’s testimony insufficient support for such a conclusion.
Additionally, other testimony corroborated Douglas’s testimony. Officer Vines testified that Douglas’s shirt and pants were torn, that Douglas had on no shoes, and that he was bleeding at his elbows and knees. This supported Douglas’s account of the injuries he received when he jumped from the moving car and of the items taken in the robbery.
|7Williams further urged that conflicting testimony given by Det. Oster rendered the evidence insufficient to support the convictions. At a hearing on a motion to suppress, Oster stated that Douglas was the first to come up with Reginald Williams’ name. At trial, Oster testified that he was the first to arrive at the name Reginald Williams, but that he did not tell Douglas of the name at the time. Apparently, Williams contends that this discrepancy renders insufficient the evidence presented identifying him as one of Douglas’s attackers.
In cases involving a defendant’s claim that he was not the person who *1263 committed the crime, the Jackson rationale requires the state to negate any reasonable probability of misidentification in order to carry its burden of proof. State v. Brady, 414 So.2d 364 (La.1982); State v. Baker, supra. Positive identification by only one witness may be sufficient to support a defendant’s conviction. State v. Davis, 27,961 (La.App.2d Cir.4/8/96), 672 So.2d 428, writ denied, 97-0383 (La.10/31/97), 703 So.2d 12; State v. Miller, 561 So.2d 892 (La.App. 2d Cir.), writ denied, 566 So.2d 983 (1990). How Williams’ name was first determined is inconsequential. Williams’ unnamed picture was placed in a photographic line-up with five other men and Douglas visually positively identified Williams in the line-up and again at trial as one of his assailants. Furthermore, Oster was thoroughly cross-examined at trial on the issue of who first arrived at Williams’ name.
It is not the function of the court of appeal to evaluate the credibility of witnesses. State v. Williams, 448 So.2d 753 (La.App. 2d Cir.1984), citing State v. Richardson, 425 So.2d 1228 (La.1983). A reviewing court accords great deference to a jury’s decision to accept or reject the testimony of a witness in whole or in part. State v. Bosley, 29,253 (La.App.2d Cir.4/2/97), 691 So.2d 347, writ denied, 97-1203 (La.10/17/97), 701 So.2d 1333. A factual ^determination concerning conflicting testimony will not be disturbed on review unless it is clearly contrary to the evidence. State v. Mussall, 523 So.2d 1305 (La.1988); State v. Taylor, 621 So.2d 141 (La.App. 2d Cir.1993), writ denied, 93-2054 (La.2/11/94), 634 So.2d 371. After considering the evidence presented, a reasonable jury could have concluded beyond a reasonable doubt that Williams and Hughes robbed and kidnapped Douglas. The evidence supports the convictions for armed robbery and second degree kidnapping.
We also find without merit Williams’ argument concerning the denial of his motion for new trial. La.C.Cr.P. art. 851(1) provides that the court shall grant a motion for new trial whenever the verdict is contrary to the law and the evidence; i.e., that the evidence was insufficient to sustain the conviction. This motion presents only the issue of the weight of the evidence and the refusal to grant such a motion is not subject to appellate review, except for error of law. State v. Mitchell, 26,070 (La.App.2d Cir.6/22/94), 639 So.2d 391, writ denied, 94-1981 (La.12/16/94), 648 So.2d 387. Williams’ argument centers around sufficiency of evidence, an issue properly raised in the trial court by a motion for post-verdict judgment of acquittal under La.C.Cr.P. art 821; State v. Mitchell, supra. Sufficient evidence was presented to support the convictions of both defendants. The trial court did not err in denying Williams’ motion for new trial. These assignments of error are without merit.

Denial of Motion to Suppress the Photographic Line-ups

Assignment of Error # 2: The Honorable Trial Court erred in denying Appellant’s motion to suppress the photo lineup. (Williams)
Assignment of Error # 1: The trial court erred in denying appellant’s motion to suppress a photographic lineup. (Hughes)
Because the victim had given a description before the line-up describing one of his assailants, in part, as a dark-skinned black man, Hughes contended the 18line-up was impermissibly suggestive because he had the darkest skin tone of all six males appearing in the line-up. Williams asserted his line-up should have been suppressed because Det. Oster actually suggested to the victim which individual was Williams.
When a defendant seeks to suppress an identification, he must show that the procedure used was suggestive and that the totality of the circumstances presented a substantial likelihood of mis-identification. State v. Martin, 595 So.2d 592 (La.1992). The U.S. Supreme Court *1264 has indicated several factors appropriate for evaluating whether the reliability of an identification may outweigh the suggestiveness of the procedures employed. These factors include (1) the opportunity of the witness to view the criminal at the time of the crime, (2) the witness’s degree of attention, (3) the accuracy of the victim’s prior description of the criminal, (4) the level of certainty demonstrated at the confrontation, and (5) the time between the crime and the confrontation. Neil v. Biggers, 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972). See also State v. Davis, supra.
A line-up is unduly suggestive if the procedure used focuses attention on the defendant. For example, distinguishing marks on the photographs may single out the accused, or suggestiveness can arise if sufficient resemblance of physical characteristics and features does not reasonably test identification. State v. Tucker, 591 So.2d 1208 (La.App. 2d Cir.1991), writ denied, 594 So.2d 1317 (1992). Photographs used in a line-up are suggestive if they display the defendant so singularly that the witness’s attention is unduly focused on the defendant. State v. Tucker, supra. It is not required that each person whose photograph is used in the line-up have the exact physical characteristics as the defendant. What is required is sufficient resemblance to reasonably test identification. State v. Davis, supra. Even if suggestiveness is proven by the defendant, it is the likelihood of [inmisidentifícation, and not the mere existence of suggestiveness, which violates due process. State v. Williams, 375 So.2d 364 (La.1979); State v. Davis, supra.
At trial, Hughes’ counsel cross-examined Det. Oster about the skin color of the individuals placed in the line-up. Oster testified that because of lighting conditions the photographs do not always accurately reflect an individual’s actual skin tone. Further, he stated that he attempted to construct the line-up of individuals who closely resembled each other.
Williams presented no evidence at trial to support his assertion that Det. Oster actually suggested to Douglas which individual was Williams. He argued, in brief, that Oster must have suggested Williams’ identity to Douglas because Douglas was able to recall more details of the attackers’ descriptions two days after the attack when he was interviewed by Oster than immediately following the event and because Oster gave slightly conflicting testimony at the motion to suppress hearing and at the trial regarding who first arrived at Williams’ name. These allegations, however, are in direct conflict with Oster’s trial testimony of how the line-up was conducted and are not supported by the facts contained in the record.
Neither defendant established that the procedures used in this case were suggestive. Neither established that the totality of the circumstances presented a substantial likelihood of misidentification. Douglas had seen both defendants on occasion prior to the day of the crime. He had ample opportunity to view the defendants on the day of the crimes and gave accurate descriptions of both defendants prior to identifying each of them in photographic line-ups. Douglas made a positive identification of the defendants in the photographic line-ups, which occurred within a few days of the armed robbery and kidnapping. The trial Incourt did not err in refusing to suppress the photographic lineup identifications. We find no merit in these assignments of error.

Failure to Excuse a Sleeping Juror

Assignment of Error # 4: The Honorable Trial Court erred in refusing to excuse a juror sleeping during the course of Appellant’s trial. (Williams)
Assignment of Error # 3: The trial court erred in failing to exclude a sleeping juror. (Hughes)
Hughes abandoned this assignment of error and noted, in brief, that a poll of the jury revealed that the juror in question voted to acquit the defendants on both charges.
*1265 Williams did not brief or argue this assignment of error. URCA 2-12.4. Assignments of error which are neither briefed nor argued are considered abandoned. A mere statement of an assignment of error in a brief does not constitute briefing of the assignment. Therefore, the assignment is deemed abandoned. State v. Toney, 26,711 (La.App.2d Cir.3/1/95), 651 So.2d 387.

Sufficiency of the Evidence for Adjudication as Habitual Offenders

Assignment of Error # 6: The evidence herein is legally insufficient to sustain Appellant’s adjudication as an habitual offender. (Williams)
Assignment of Error #4: The trial court erred in adjudicating appellant a fourth felony offender Hughes. (Hughes)
Initially, the defendants contended that the record presented to this court was insufficient to allow for review of these claims, based on appellate counsels’ mistaken belief that this court was not provided with the court minutes and transcripts of the prior pleas. The appellate record contained the bills of information, court minutes, and transcripts of each prior guilty plea, thus enabling this court to address these assignments of error.
La. R.S. 15:529.1 provides, in pertinent part, that in an habitual offender adjudication, the state shall have the burden of proof beyond a reasonable doubt |1gon any issue of fact and that the presumption of regularity of judgment shall be sufficient to meet the original burden of proof.
Hughes had pled guilty to three felonies prior to being charged in the instant case. On May 18, 1987, he pled guilty to attempted Sexual Battery. On August 5, 1988, he entered a guilty plea to attempted Possession of Cocaine. On May 7, 1991, Hughes again pled guilty to attempted Possession of Cocaine. At the habitual offender hearing, the state introduced copies of the court minutes and the guilty plea colloquies on each of the prior pleas. On each plea Hughes was advised of his right to a jury trial, the right to confront witnesses and his right to remain silent. He indicated in each that he understood these rights and was waiving them. Hughes was represented by counsel during his prior guilty pleas. The state also introduced the bills of information from the three previous offenses. A fingerprint expert testified that the fingerprints on those three bills matched the prints taken from Hughes in open court.
Williams had one prior felony conviction, having pled guilty on February 15, 1996, to illegal use of a weapon. At. the habitual offender hearing, the state introduced into evidence a copy of the court minutes, bill of information, and the guilty plea colloquy. The transcript reflects that Williams was advised of his right to a jury trial, the right to confront witnesses, and his right to remain silent. Williams, represented by counsel, waived these rights. A fingerprint expert testified that the fingerprints on the earlier bill matched those taken from Williams in open court on the day of the hearing.
The state offered sufficient evidence to meet its burden of proof and the defendants offered no evidence to rebut the presumption of validity. The trial court properly found Hughes to be a fourth felony offender and Williams to be a second felony offender. These assignments of error are without merit.
[ iaSentences and Compliance with Sentencing Guidelines
Assignment of Error # 5: The Honorable Trial court erred in imposing upon Appellant excessive sentences. (Williams)
Assignment of Error # 7: The Honorable Trial Court erred in imposing excessive sentences in response to Appellant’s adjudication as an habitual offender. (Williams)
Assignment of Error # 8: The Honorable Trial Court failed to comply with the requirements of La. C.CR.P. art. *1266 894.1 in imposing Appellant’s sentences. (Williams)
Assignment of Error # 5: The trial court did not adequately comply with the sentencing mandates of La.C.Cr.P. art. 894.1 and the sentences imposed are unduly harsh and excessive. (Hughes)

Excessiveness of Sentences as Habitual Offenders

La. R.S. 15:529.1 provides, in pertinent part:
A.(l) Any person who, after having been convicted within this state of a felony ... thereafter commits any sub-stequent felony within this state, upon conviction of said felony, shall be punished as follows:
(a) If the second felony is such that upon a first conviction the offender would be punishable by imprisonment for any term less than his natural life, then the sentence to imprisonment shall be for a determinate term not less than one-half the longest term and not more than twice the longest term prescribed for a first conviction....
H: * *
(c) If the fourth or subsequent felony or any of the prior felonies is a felony defined as a crime of violence under R.S. 14:2(13) or as a violation of the Uniform Controlled Substances Law punishable by imprisonment for more than twelve years, the person shall be imprisoned for the remainder of his natural life without benefit of parole, probation, or suspension of sentence.
A conviction for armed robbery carries a sentence of imprisonment at hard labor for not less than 5 years and not more than 99 years without benefit of parole, probation or suspension of sentence. La. R.S. 14:64(B). The trial court adjudicated Williams a second felony offender for the armed robbery and sentenced him to 49 years at hard labor without the benefit of parole, probation of suspension of sentence, which is the mandatory minimum sentence. Hughes |uwas adjudicated a fourth felony offender for the armed robbery and the trial court imposed the mandatory sentence of life without benefit of parole, probation, or suspension of sentence.
Each defendant asserted that the sentence he received pursuant to the habitual offender statute is constitutionally excessive. Both defendants cited State v. Dorthey, 623 So.2d 1276 (La.1993) which indicated that even a punishment required by statute may constitute excessive punishment if it was a purposeless imposition of pain and suffering and was grossly disproportionate to the severity of the crime.
The appellate courts of this state, however, have recognized that declaring a sentence under the Habitual Offender Law constitutionally excessive should be a rare act, not a commonplace practice. State v. Ignot, 29,745 (La.App.2d Cir.9/24/97), 701 So.2d 1001, unit denied, 99-0336 (La.6/18/99), 745 So.2d 618. Furthermore, the minimum sentence compelled by Louisiana law is presumed not to be excessive. State v. Juarez, 624 So.2d 26 (La.App. 2d Cir.1993).
Whether a sentence imposed is excessive depends on the circumstances of the case and the background of the defendant. A sentence violates La. Const. Art. I, Sec. 20, if it is grossly out of proportion to the seriousness of the offense or nothing more than a purposeless and needless infliction of pain and suffering. State v. Dorthey, supra; State v. Bonanno, 384 So.2d 355 (La.1980). A sentence is considered grossly disproportionate if, when the crime and punishment are viewed in light of the harm done to society, it shocks the sense of justice. State v. Hogan, 480 So.2d 288 (La.1985); State v. Bradford, 29,519 (La.App.2d Cir.4/2/97), 691 So.2d 864.
Williams received the mandatory minimum sentence of 49 years under the applicable statutes and Hughes received the mandatory life sentence for al1sfourth felony offender. Their offenses were serious *1267 crimes against a person. On the record presented, we do not find the sentences to be constitutionally excessive.

Compliance with La.C.Cr.P. art. 89k-l in Sentencing as Habitual Offenders

Both defendants complained that the trial court failed to comply with the requirements of La.C.Cr.P. art. 894.1 in imposing their sentences. Williams, however, did not file a motion to reconsider sentence. A defendant must present to the trial court the arguments he wishes to preserve on appeal. When the defendant fails to present his specific arguments, he is relegated to having the appellate court consider the bare claim of constitutional excessiveness. State v. Mims, 619 So.2d 1059 (La.1993); State v. Duncan, 30,453 (La.App.2d Cir.2/25/98), 707 So.2d 164. Williams cannot now complain about the trial court’s alleged failure to comply with La.C.Cr.P. art. 894.1.
Hughes did file a motion to reconsider the life sentence he received. Louisiana courts have held, however, that a trial court’s failure to articulate reasons for a sentence when imposing a mandatory sentence is not error. When the court has no discretion in sentencing, to require a listing of the factors considered would be an exercise in futility. State v. Koon, 31,-177 (La.App.2d Cir.2/24/99), 730 So.2d 503; State v. Ignot, supra.

Excessiveness of Sentences on Second Degree Kidnapping

Williams and Hughes each urged that his sentence for the conviction of second degree kidnapping was excessive. Each received a concurrent sentence of 30 years at hard labor without benefit of parole, probation or suspension of sentence.
The sentencing range for second degree kidnapping is imprisonment at hard labor for not less than 5 years nor more than 40 years. At least two years of [1fithe sentence must be served without benefit of parole, probation or suspension of sentence. La. R.S. 14:44.1(0.
The record indicates that defendant Hughes was born on November 26, 1968. His presentence investigation report showed an extensive adult criminal history with the vast majority of the charges involving drugs or violence. The only work history indicated was employment by a restaurant for approximately two years. At the time of the instant offense, Hughes had not reached his 30th birthday, but had already pled guilty to three felonies.
The presentence investigation report of Williams revealed that he was born on July 10, 1978. Prior to the instant offense, he had been arrested for manslaughter, illegal use of a firearm, simple robbery, possession of a Schedule One controlled substance and aggravated assault of a juvenile with a gun. Only one of the arrests resulted in a conviction. Williams left school at age 15. No work history was included.
Given the violent circumstances of this case and the background of the defendants, we cannot find that the 30 year sentences imposed on each of the defendants are excessive. The sentences are not grossly out of proportion to the seriousness of the second degree kidnapping perpetrated on Douglas by the defendants. These assignments of error are without merit.

Compliance with La.C.Cr.P. art. 89U. 1 in Sentencing on Second Degree Kidnapping

La.C.Cr.P. art. 894.1(C) requires the court to state for the record the considerations taken into account and the factual basis used when imposing a sentence. The trial court need not refer to every aggravating and mitigating circumstance in order to comply with the article. The record must affirmatively reflect that adequate consideration was given to the codal guidelines in particularizing the sentence to the defendant. State v. Smith, 433 So.2d 688 (La 1983). Important elements which should be considered by the trial judge are the defendant’s personal history (age, family ties, marital status, health, employment record), prior criminal record, seriousness of the offense and likelihood of rehabilitation. State v. Jones, *1268 398 So.2d 1049 (La.1981); State v. Hudgins, 519 So.2d 400 (La.App. 2d Cir.1988), unit denied, 521 So.2d 1143 (La.1988).
As previously noted, Williams did not file a motion to reconsider sentence and cannot now urge this alleged trial court error. Hughes did file a motion to reconsider sentence. The transcript of Hughes’ sentencing proceeding reflects that the trial court first sentenced Hughes, for the conviction of armed robbery, to life imprisonment at hard labor without benefit of parole, probation, or suspension of sentence. Defense counsel immediately filed and argued a motion to reconsider the life sentence. Responding to defense counsel’s argument on the motion, the trial judge stated that he would file Hughes’ presentence investigation report, noting that the report indicated Hughes had a long history of criminal activity, many arrests, and many convictions. After denying the motion to reconsider the sentence of life imprisonment for the armed robbery, the trial court then sentenced Hughes to a concurrent sentence of 30 years without benefit of parole, probation, or suspension of sentence.
Hughes urges that the trial court did not adequately particularize the 30-year sentence for second degree kidnapping, as required by art. 894.1. We disagree. The trial judge stated at the beginning of the sentencing proceeding that he had the pre-sentence investigation report into Hughes’ background. Immediately prior to sentencing Hughes for the second degree kidnapping, the trial judge discussed Hughes’ lengthy criminal history. The presentence investigation report was filed into the record. Under the circumstances of this Incase, we find the trial court adequately particularized the sentence. This argument is without merit.

Errors Alleged by Hughes in Pro-se Brief

In his own brief, Hughes contended that his conviction should be reversed because an indictment was required in his case. La.C.Cr.P. art. 382 provides, in part:
A. A prosecution for an offense punishable by death, or for an offense punishable by life imprisonment shall be instituted by a grand jury. Other criminal prosecutions in a district court shall be instituted by indictment or by information.
Hughes was charged by an amended bill of information with armed robbery and second degree kidnapping. Neither of these offenses carries a sentence of death or life imprisonment. Consequently, a grand jury indictment was not necessary. This argument is without merit.
Hughes next urged that the guilty verdicts were unlawful because they were not unanimous. The jury verdict was 10 to 2 to convict on each count. He alleges that he was denied due process of law.
La. Const. Article 1, Sec. 17 provides, in part:
A criminal case in which the punishment may be capital shall be tried before a jury of twelve persons, all of whom must concur to render a verdict. A case in which the punishment is necessarily confinement at hard labor shall be tried before a jury of twelve persons, ten of whom must concur to render a verdict.
Laws authorizing nonunanimous jury verdicts have withstood numerous constitutional challenges. See State v. Edwards, 420 So.2d 663 (La.1982); State v. Morgan, 315 So.2d 632 (La.1975). This contention is without merit.
Hughes contended an insufficient amount of time lapsed between his conviction and sentence. La.C.Cr.P. art. 837 provides, in part, as follows:
If a defendant is convicted of a felony, at least three days shall elapse between conviction and sentence. If a motion for a new trial, or in \ 1flarrest of judgment, is filed, sentence shall not be imposed until at least twenty-four hours after the motion is overruled.
On June 18, 1998, the jury rendered verdicts of guilty of armed robbery and *1269 second degree kidnapping against both defendants. A motion for a new trial was denied on September 9, 1998. Habitual offender bills were filed against both defendants and hearings were held. On September 18, 1998, defendant Hughes was adjudicated a fourth felony offender. He was not sentenced on the habitual offender adjudication and the second degree kidnapping conviction until November 30, 1998. More than three days passed between Hughes’ conviction and sentencing. This argument is without merit.
We also reject Hughes’ assertion that he was entitled to be represented by two attorneys. The record reflects that Hughes was provided the appointed counsel required by La. Const. Art. 1, Sec. 13. No provision of law entitles a defendant to representation by two attorneys.
Additionally, Hughes attempted to assert that his counsel was ineffective. The brief contained no specific allegations which would allow review by this court. As a general rule, a claim of ineffective assistance of counsel is more properly raised in an application for post-conviction relief in the trial court than by appeal. Such a post-conviction relief claim would allow Hughes the opportunity for a full evidentiary hearing under La.C.Cr.P. art. 930. State ex rel. Bailey v. City of West Monroe, 418 So.2d 570 (La.1982); State v. Green, 27,652 (La.App.2d Cir.1/24/96), 666 So.2d 1302, writ denied, 97-0504 (La.10/31/97), 703 So.2d 14.

DECREE

On the record presented, the convictions, adjudications as habitual offenders, and sentences of Williams and Hughes are affirmed.
AFFIRMED.