672 So.2d 428 (1996)
STATE of Louisiana, Appellee
v.
Lester Lewis DAVIS, Appellant.
No. 27961-KA.
Court of Appeal of Louisiana, Second Circuit.
April 8, 1996.
*430 Robert S. Noel, II, Monroe, for Appellant.
Richard Ieyoub, Attorney General, Jerry L. Jones, District Attorney, and Robert S. Tew, Asst. District Attorney, for Appellee.
Before SEXTON, HIGHTOWER and STEWART, JJ.
STEWART, Judge.
A 10-2 jury found defendant guilty as charged of one count of distribution of cocaine. In his three assignments of error, the defendant urges that the evidence was insufficient, the police officer's identification of him was the result of a misleading photo lineup, and that the 20-year sentence is excessive. We affirm the conviction and sentence for the reasons assigned.

FACTS
On March 29, 1993, Lester Davis sold cocaine to Deputy Kelvin Gardner, an officer with the Metro Narcotics Unit in Monroe, during an undercover drug operation. The officer, who was wired for safety, met the defendant at Tenth and DeSiard Streets in Monroe. Officer Ellis, also with the Metro Narcotics Unit, monitored the transaction with surveillance equipment.
The confidential informant (CI), with whom Gardner was working, pointed out the defendant and called him by his street name, "Black." The defendant then approached the car and sold him two rocks of crack cocaine for $40. The transaction took place at four o'clock in the afternoon. Gardner paid the defendant with two $20 bills. Less than a week after the transaction, Gardner picked the defendant out of a photographic lineup prepared by Officer Ellis. The police arrested the defendant seven months after the crime.
In court, Officer Gardner identified the defendant as the same person who sold him the drugs. Gardner also testified that he was close to the defendant during the transaction and could see him very well. The officer stated that he paid careful attention to the defendant, so that he could identify him later.
At trial, the defendant objected to the introduction of the photographic lineup into evidence and argued that it was unduly suggestive, because his photo was placed with the photos of other men who were younger than the defendant and who had lighter skin. The trial court admitted the photographs over the defendant's objections.
The jury found the defendant guilty and the trial court sentenced him to 240 months at hard labor, as recommended by the designated sentencing guidelines grid. The defendant subsequently lodged this appeal.

DISCUSSION
In his first and second assignments of error, the defendant argues that the evidence is insufficient to support the jury's verdict and that the trial court erred in not suppressing the photographic lineup. Defendant argues that "but for the misidentification by Deputy Gardner," there was no evidence linking him to the crime. He claims the lineup was unduly suggestive, in that his photo was placed with those of men 10 years younger than himself and that "the differences in skin tone were marked."
In reviewing the sufficiency of the evidence to support a conviction, an appellate court is controlled by the standard enunciated *431 by the United States Supreme Court in Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). The appellate court must determine whether the evidence, viewed in the light most favorable to the prosecution, was sufficient to convince a rational trier of fact that all of the elements of the crime had been proven beyond a reasonable doubt. State v. Nealy, 450 So.2d 634 (La.1984); State v. Doby, 540 So.2d 1008 (La.App. 2d Cir.), writ denied, 544 So.2d 398 (1989).
In cases involving a defendant's claim that he was not the person who committed the crime, the Jackson rationale requires the state to negate any reasonable possibility of misidentification in order to carry its burden of proof. State v. Long, 408 So.2d 1221 (La.1982); State v. Chism, 591 So.2d 383 (La.App. 2d Cir.1991); State v. Ford, 26,422, (La.App. 2d Cir. 9/21/94), 643 So.2d 293.
In seeking to suppress an identification, the defendant must prove the procedure used was suggestive and that the totality of the circumstances presented a substantial likelihood of misidentification. State v. Martin, 595 So.2d 592 (La.1992); State v. West, 561 So.2d 808 (La.App. 2d Cir.1990), writ denied, 566 So.2d 983 (1990). The U.S. Supreme Court has approved several factors for evaluating whether the reliability of an identification may outweigh the suggestiveness of the procedures employed. See Manson v. Brathwaite, 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977); Neil v. Biggers, 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972). The factors are: (1) the opportunity of the witness to view the criminal at the time of the crime, (2) the witness's degree of attention, (3) the accuracy of the victim's prior description of the criminal, (4) the level of certainty demonstrated at the confrontation, and (5) the time between the crime and the confrontation.
A lineup is unduly suggestive if the procedure used focuses attention on the defendant. For example, distinguishing marks on the photos may single out the accused, or suggestiveness can arise if sufficient resemblance of physical characteristics and features does not reasonably test identification. State v. Tucker, 591 So.2d 1208, 1213 (La. App. 2d Cir.1991), writ denied, 594 So.2d 1317 (1992), citing State v. Robinson, 386 So.2d 1374 (La.1980).
Photographs used in a lineup are suggestive if they display the defendant so singularly that the witness's attention is unduly focused on the defendant. State v. Smith, 430 So.2d 31 (La.1983); State v. Tucker, supra. It is not required that each person whose photograph is used in the lineup have the exact physical characteristics as the defendant. What is required is sufficient resemblance to reasonably test identification. State v. Smith, supra.
Even if suggestiveness is proven by the defendant, it is the likelihood of misidentification, and not the mere existence of suggestiveness, which violates due process. State v. Williams, 375 So.2d 364 (La.1979).
Positive identification by only one witness may be sufficient to support a conviction. State v. Miller, 561 So.2d 892 (La.App. 2d Cir.), writ denied, 566 So.2d 983 (1990).
Distribution of a controlled dangerous substance is the knowing or intentional distribution of a listed substance. LSA-R.S. 40:967. Cocaine is listed as a controlled dangerous substance, schedule II. LSA-R.S. 40:964. Distribution means to deliver a controlled dangerous substance whether by physical delivery or through the agency of a third party. State v. Gentry, 462 So.2d 624 (La.1985); State v. Seay, 521 So.2d 1206 (La. App. 2d Cir.1988).
In court, Gardner identified the defendant as "Black," the person from whom he had purchased cocaine on March 29, 1993. Gardner testified that the area was well-lit, as it was four o'clock in the afternoon when the transaction took place.
As soon as Gardner left the area, he described the defendant to Ellis as a black male, wearing a leather cap with the top cut out, and a black leather jacket. Three days later, Gardner was shown a photographic lineup and, without hesitation, picked out person number 6 as the person from whom he bought the cocaine.
*432 Gardner testified that state's exhibit 2, dated April 2, 1993, was the lineup. Ellis did not tell Gardner to pick out any particular person, nor did he name anyone. Gardner picked person number 6 and identified the defendant as soon as he saw the picture. Gardner had no doubt whatsoever about the identification. He explained that on the day of the buy, it was sunny, there was no obstruction of Gardner's view of the defendant, and he was able to view the defendant closely.
Officer Ellis testified that he was in charge of this undercover operation and listened to the transaction over the body wire. He heard Gardner call a dealer "Black," and he later received two rocks from Gardner, which he had purchased from the suspect. The state introduced, through Ellis, the lab report (S-3), which confirmed the substance to be crack cocaine.
Ellis testified that he instructs his agents to note carefully the appearance of the people from whom they buy. Ellis said that when he compiled the lineup, he was unaware of defendant's age at that time. Ellis testified that age was not a factor, but rather he looked for faces that matched the suspect's face. He looked for photos of black men with a dark complexion and a mustache, as per Gardner's description right after the buy.
The evidence shows that Gardner had more than a brief moment to observe the defendant during the negotiations for the crack. Gardner knew that he would be required to identify the suspect. Gardner, trained to note physical features carefully, described defendant accurately, and positively identified him shortly after the buy with little hesitation. The evidence negates any possibility that there was a reasonable chance of misidentification.
The evidence shows, beyond a reasonable doubt, that defendant is the person who delivered crack cocaine to Deputy Ellis and that he did so intentionally. The state proved the substance was cocaine. Thus, the state proved the elements of the offense beyond a reasonable doubt. These assignments are without merit.
In his third assignment of error, defendant complains that his sentence of 240 months was excessive.
Prior to imposing sentence, the district court reviewed a presentence investigation report and a sentencing guidelines report.[1] Based on his numerous prior convictions, which include distribution of PCP and marijuana, defendant fell within grid cell 2-A, which recommended 210 to 240 months. The judge imposed the 240-month sentence and denied an oral motion to reconsider, which merely urged that the sentence was constitutionally excessive.
The law in effect at the time of sentencing held that when a defendant's motion for reconsideration urges merely that the sentence is excessive, he is relegated only to a claim of constitutional excessiveness. State v. Mims, 619 So.2d 1059 (La.1993). In the present case, the trial court imposed a term of incarceration within the range suggested by the designated guidelines grid cell. Such a sentence is appropriate for an offender with that criminal history, and is not excessive under the Louisiana Constitution. State v. Toney, 26,711 (La.App. 2d Cir. 3/1/95), 651 So.2d 387; State v. Manning, 26,287 (La.App. 2d Cir. 9/21/94), 643 So.2d 307; State v. Essex, 618 So.2d 574 (La.App. 2d Cir.1993); La.S.G. § 201(C).
Defendant is a fourth felony offender, and this is his third conviction for distribution of controlled dangerous substances. He has adult convictions dating back to 1971 for simple battery, resisting arrest, drunk and disorderly conduct, possession of marijuana, theft, criminal damage to property, attempted simple burglary of an inhabited dwelling, distribution of marijuana, and distribution of PCP. Defendant committed the instant offense while on parole for the PCP offense. The sentence imposed is only two-thirds of the statutory maximum for a first offender. Had he been billed and adjudged as a fourth felony offender, he would have faced a minimum of life at hard labor without *433 benefit, LSA-R.S. 15:529.1(A)(3)(b). There is no showing that this sentence is constitutionally excessive. This assignment is also without merit.
We have examined the record for error patent pursuant to LSA-C.Cr.P. Art. 920(2), and found none.

DECREE
For these reasons, the defendant's conviction and sentence are AFFIRMED.
NOTES
[1] Although the Louisiana Sentencing Guidelines were repealed effective August 15, 1995, they were in effect when the instant offense was committed and when sentence was imposed.