DREW, J.
_]_jJustin Terrell Atkins was unanimously convicted at jury trial of the crimes of armed robbery, La. R.S. 14:64[1] and aggravated battery, La. R.S. 14:34. Both crimes were part of the same event, but involved different victims. He was sentenced to 35 years at hard labor without benefits on the armed robbery, consecutive with the maximum 10 years at hard labor on the aggravated battery.
Atkins now appeals, urging insufficiency, a tainted lineup identification, and an excessive sentence. We affirm in all respects.
FACTS
On January 2, 2009, Robert Jones, Howard Bishop, and Tom Harris were drinking together at Jones’ modest residence on Jackson Street in Monroe. All three men lived in the neighborhood. Bishop and Jones had just returned to the residence after cashing Jones’ YA check. Atkins knew of the transaction.
Atkins kicked in the door, barged into the home, and demanded money from Jones, who refused. Atkins began beating Jones with the butt of a firearm. Harris intervened and was also struck with the firearm. Bishop witnessed all of this, even observing Atkins take the money from Jones’ pocket.
12Lurking at the door during the robbery was a man named Lawrence Horton,[2] known in the neighborhood only as “O.” Horton had been living with Harris for a few months. That morning, however, Harris ordered him to leave.[3] Harris had known Horton for about a year.
A few days after the robbery, Harris later found some correspondence at the residence which bore O’s real name: Lawrence Horton.
Eight days after the robbery, Horton sent word that he wanted to speak with the police. When Detective Jeffrey Dowdy questioned him, Horton admitted his part in the robbery. He blamed mainly Atkins for this crime.
After an arrest warrant was secured, Atkins was arrested.
Harris later obtained a photo of the robber, whom he identified as “J. Money.” [4] Harris gave the photo to the detective, claiming that it depicted the person who beat him, and who had beaten and robbed Jones.
Atkins was convicted and sentenced as outlined above.
ISSUES

Sufficiency

Our law on appellate review for *240 sufficiency of the evidence is well settled.[5]
Though Bishop and Harris had been drinking at the time of the crime, they had no difficulty in identifying Atkins as the armed robber. Bishop immediately picked out Atkins in a lineup. Bishop and Harris pointed out the defendant at trial, in the presence of the jury.[6] Positive identification by one witness is sufficient to support a conviction. State v. Weary, 03-3067 (La.4/24/06), 931 So.2d 297.
14At the time of the robbery, the crimes of conviction bore the same elements as each still does today.[7]
Harris and Bishop each identified Atkins as the man who beat them with the butt of a firearm, and who committed the robbery. In the early investigation, codefendant Horton had implicated Atkins and himself *241 in this brutal crime. A rational jury had ample evidence by which to justify the verdicts of guilty.

Lineup

Atkins’s claim that he was misidentified is weakened by these facts:
• The robber made no attempt to hide his face;
• The robbery occurred midday;
• Harris and Bishop had ample opportunity to observe the intruders;
• Both Harris and Bishop already knew Atkins [8] and his accomplice;
• Bishop observed the photo lineup a few days after the crime, fingering Atkins; and
• Both men identified Atkins in open court, in full view of the jury.
|sLess than two weeks after the armed robbery and aggravated battery, Harris found and provided Det. Dowdy with a photo of Atkins.
Less than two weeks after the crime, Bishop quickly picked Atkins out of a photo lineup, which is preserved in the record. We have reviewed it, and find no suggestiveness or impropriety in its makeup. On the contrary, it is close to an ideal lineup; all participants look remarkably similar.
Our law on appellate review of a motion to suppress an identification is well settled.[9]
The lineup was fair and reasonable. The jury was able to assess the witnesses in their respective identifications of Atkins at trial. Perhaps most [ (¡importantly, Harris, Bishop, and Atkins all ran in the same *242 neighborhood. They were already familiar with one another, even if only by nicknames.
This assignment of error is meritless.

Excessiveness

Our law on the appellate review of sentences for excessiveness is well settled.[10]
These unprovoked and violent crimes are inexcusable. We find this slightly less than midrange sentence to be more than reasonable. The sentence certainly does not shock the conscience.
With several felony convictions, Atkins has never responded to supervision. He is becoming more violent, and he viciously preyed upon some neighborhood men.
We have reviewed the presentence investigation report and find nothing to indicate that more leniency is required here. The sentencing judge did a thorough job in explaining his reasons for this sentence. There is no error.
|7DECREE
The conviction and sentence are AFFIRMED.

. Atkins was not billed under the sentencing enhancement statute, La. R.S. 14:64.3, which would have added five years to the minimum and maximum terms for the armed robbery conviction, raising his exposure for that offense to 15-104 years at hard labor, without benefits. He faced, and received, a maximum of 10 years at hard labor on the aggravated battery conviction, consecutive to the other prison sentence.

. "O” had followed Jones and Bishop to the store late that same morning. There he had observed Jones cash his check at the “Cracker Barrel.’’

. Horton had paid very little rent during the months he lived with Harris. The last straw was when Harris was informed that Horton had thrown a party at the home of Harris, while Harris was in Baton Rouge working. Harris ordered Horton out, and Horton left, a couple of hours before the robbery.

. This was the nickname of the defendant, Justin Terrell Atkins.

.The standard of appellate review for a sufficiency of the evidence claim is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Tate, 2001-1658 (La.5/20/03), 851 So.2d 921, cert. denied, 541 U.S. 905, 124 S.Ct. 1604, 158 L.Ed.2d 248 (2004); State v. Carter, 42, 894 (La.App.2d Cir. 1/9/08), 974 So.2d 181, writ denied, 2008-0499 (La. 11/14/08), 996 So.2d 1086. This standard, now legislatively embodied in La. C. Cr. P. art. 821, does not provide the appellate court with a vehicle to substitute its own appreciation of the evidence for that of the fact finder. State v. Pigford, 2005-0477 (La.2/22/06), 922 So.2d 517; State v. Dotie, 43,819 (La.App.2d Cir. 1/14/09), 1 So.3d 833, writ denied, 2009-0310 (La.11/6/09), 21 So.3d 297. The appellate court does not assess the credibility of witnesses or reweigh evidence. State v. Smith, 94-3116 (La. 10/16/95), 661 So.2d 442. A reviewing court accords great deference to a jury's decision to accept or reject the testimony of a witness in whole or in part. State v. Eason, 43,788 (La.App.2d Cir.2/25/09), 3 So.3d 685, writ denied, 2009-0725 (La. 12/11/09), 23 So.3d 913.
The Jackson standard is applicable in cases involving both direct and circumstantial evidence. An appellate court reviewing the sufficiency of evidence in such cases must resolve any conflict in the direct evidence by viewing that evidence in the light most favorable to the prosecution. When the direct evidence is thus viewed, the facts established by the direct evidence and inferred from the circumstances established by that evidence must be sufficient for a rational trier of fact to conclude beyond a reasonable doubt that defendant was guilty of every essential element of the crime. State v. Sutton, 436 So.2d 471 (La.1983); State v. Speed, 43,786 (La.App.2d Cir. 1/14/09), 2 So.3d 582, writ denied, 2009-0372 (La. 11/6/09), 21 So.3d 299.
Where there is conflicting testimony about factual matters, the resolution of which depends upon a determination of the credibility of the witnesses, the matter is one of the weight of the evidence, not its sufficiency. State v. Speed, supra; State v. Allen, 36, 180 (La.App.2d Cir.9/18/02), 828 So.2d 622, writs denied, 2002-2595 (La.3/28/03), 840 So.2d 566, 2002-2997 (La.6/27/03), 847 So.2d 1255, cert. denied.
In the absence of internal contradiction or irreconcilable conflict with physical evidence, one witness’s testimony, if believed by the trier of fact, is sufficient support for a requisite factual conclusion. State v. Gullette, 43,-032 (La.App.2d Cir.2/13/08), 975 So.2d 753.

. Jones did not testify at trial, as he died less than a week after this traumatic event. Surprisingly, the autopsy indicated that his death was unrelated to the brutal beating he took.

. La. R.S. 14:64. Armed robbery
A. Armed robbery is the taking of anything of value belonging to another from the person of another or that is in the immediate control of another, by use of force or intimidation, while armed with a dangerous weapon.
B. Whoever commits the crime of armed robbery shall be imprisoned at hard labor for not less than ten years and for not more than ninety-nine years, without benefit of parole, probation, or suspension of sentence.
La. R.S. 14:34. Aggravated battery
Aggravated battery is a battery committed with a dangerous weapon. Whoever commits an aggravated battery shall be fined not more than five thousand dollars, imprisoned with or without hard labor for not more than ten years, or both.

. Sometimes we complicate cases unnecessarily. Not here. Consider this interesting and telling trial exchange between defense counsel and Mr. Harris, discussing the fact that some neighbors brought him a photo of Atkins about a week after the robbery:
Q: "How did they know to give you a picture of Mr. Atkins?”
A: "Because he the one hit me in the head.”

. In seeking to suppress an identification, the defendant must prove the procedure used was suggestive and that the totality of the circumstances presented a substantial likelihood of misidentification. State v. Martin, 595 So.2d 592 (La.1992); State v. West, 561 So.2d 808 (La.App. 2d Cir.1990), writ denied, 566 So.2d 983 (La.1990). The U.S. Supreme Court has approved several factors for evaluating whether the reliability of an identification may outweigh the suggestiveness of the procedures employed. See Manson v. Brathwaite, 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977); Neil v. Biggers, 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972); State v. Davis, 27,961 (La.App.2d Cir.4/8/96), 672 So.2d 428, writ denied, 97-0383 (La. 10/31/97), 703 So.2d 12. The factors are: (1) the opportunity of the witness to view the criminal at the time of the crime, (2) the witness’s degree of attention, (3) the accuracy of the victim’s prior description of the criminal, (4) the level of certainty demonstrated at the confrontation, and (5) the time between the crime and the confrontation.
A lineup is unduly suggestive if the procedure used focuses attention on the defendant. For example, distinguishing marks on the photos may single out the accused, or suggestiveness can arise if sufficient resemblance of physical characteristics and features does not reasonably test identification. State v. Tucker, 591 So.2d 1208 (La.App. 2d Cir.1991), writ denied, 594 So.2d 1317 (1992), citing State v. Robinson, 386 So.2d 1374 (La.1980).
Photographs used in a lineup are suggestive if they display the defendant so singularly that the witness's attention is unduly focused on the defendant. State v. Smith, 430 So.2d 31 (La.1983); State v. Tucker, supra. It is not required that each person whose photograph is used in the lineup have the exact physical characteristics as the defendant. What is required is sufficient resemblance to reasonably test identification. State v. Smith, supra; State v. Davis, supra.
Even if suggestiveness is proven by the defendant, it is the likelihood of misidentification, and not the mere existence of suggestiveness, which violates due process. State v. Williams, 375 So.2d 364 (La.1979); State v. Davis, supra.

. The test imposed by the reviewing court in determining the excessiveness of a sentence is two-pronged. First, the record must show that the trial court took cognizance of the criteria set forth in La. C. Cr. P. art. 894.1. The trial judge is not required to list every aggravating or mitigating factor so long as the record reflects that he adequately considered the guidelines of the article. State v. Smith, 433 So.2d 688 (La.1983); State v. Nickles, 46,189 (La.App.2d Cir.4/13/11), 60 So.3d 728. The important elements which should be considered are the defendant's personal history (age, family ties, marital status, health, employment record), prior criminal record, seriousness of the offense and likelihood of rehabilitation. State v. Jones, 398 So.2d 1049 (La.1981); State v. Haley, 38,258 (La.App.2d Cir.4/22/04), 873 So.2d 747, writ denied, 2004-2606 (La.6/24/05), 904 So.2d 728.
Second, a sentence violates La. Const. Art. I, § 20, if it is grossly out of proportion to the seriousness of the offense or nothing more than a purposeful and needless imposition of pain and suffering. State v. Smith, 2001-2574 (La. 1/14/03), 839 So.2d 1; State v. Nickles, supra. A sentence is considered grossly disproportionate if, when the crime and punishment are viewed in light of the harm done to society, it shocks the sense of justice. State v. Weaver, 2001-0467 (La. 1/15/02), 805 So.2d 166; State v. Nickles, supra.