STEWART, J.
|, The defendant, Richard Lynn Long, Jr., pled guilty to first degree murder, in violation of La. R.S. 14:30, reserving his right to appeal the trial court’s denial of his motion to suppress pursuant to State v. Crosby, 338 So.2d 584 (La.1976). He was sentenced to life imprisonment at hard labor without benefit of probation, parole, or suspension of sentence in accordance with the penalty provisions of this crime. The defendant now appeals, urging that the trial court erred in denying his motion to suppress. Finding no error in the trial court’s judgment, we affirm.
FACTS AND PROCEDURAL HISTORY
On the evening of September 11, 2010, Frances Coenen was home alone at her house located at 4086 Highway 80 in Ray-ville, Louisiana. At approximately 9:00 p.m., she heard glass shattering. Searching her home for the source of the sound, Mrs. Coenen noticed that glass had been broken out of the east window of a front bedroom, and that there was tape on the window. The bedroom light was on, but she noted that nothing else in the room appeared to be in disarray.
*801 Mrs. Coenen called the sheriffs office as a precautionary measure, telling them, “I don’t think it’s anything, I think somebody is trying to scare me because my husband is not here.” Nevertheless, the sheriffs office stayed on the telephone with her until Officer Thomas Alexander of the Rayville Police Department, with whom Mrs. Coenen was familiar, arrived.
Officer Alexander and Mrs. Coenen walked down the hallway toward the bedroom where the shattered window was located, with Officer Alexander walking directly in front of her. As they approached the | ^bedroom, they heard a “thumping” noise. Officer Alexander entered the bedroom first, and walked toward the bed. Mrs. Coenen entered the bedroom directly behind Officer Alexander and immediately noticed the drawers in the dresser had been pulled out, the curtain had been pulled aside, the closet door was open, and a table had been moved. Mrs. Coenen informed Officer Alexander that someone was in the house. The defendant then jumped out of the closet, which was located to the right of Officer Alexander and Mrs. Coenen, brandishing a handgun. Officer Alexander then instructed Mrs. Coe-nen to run, and she overheard him identify himself as a police officer. The defendant shot Officer Alexander three times in the torso. The defendant fled the scene through the shattered window, traveled across Highway 80, and was picked up by codefendant Anthony Oatis. Officer Alexander died at the scene as a result of his wounds.
Mrs. Coenen ran down the hall toward the kitchen, where she was met at the door by another police officer who had arrived as backup for Officer Alexander. Other officers arrived and began to search the house. They found Officer Alexander on the floor of the bedroom across the hall from where he had been shot. They entered the bedroom where the defendant shot Officer Alexander and found codefen-dant Robert J. Walker, hiding under the bed.
Walker agreed to cooperate with law enforcement officials, telling the investigators that he, the defendant, and Oatis had planned to travel to the Coenens’ home to burglarize it. Walker was familiar with Mrs. Coenen and her husband, Theo Coe-nen, because Walker worked previously as a trustee |sat the Richland Parish Sheriffs Office. He noticed the Coenens’ jewelry in their home while assisting Mr. Coenen with carrying boxes there on several occasions.
Walker stated that during the day of September 10, 2010, he, the defendant, and Oatis traveled in a Ford Fusion, owned by Oatis’ girlfriend, to the Coenens’ home to obtain a layout of the home and consider escape routes. The trio agreed that on September 11, 2010, Oatis would drop off Walker and the defendant near the Coe-nens’ residence, and they would enter the home to obtain some jewelry. Oatis would then pick them up at a pre-arranged location.
On the evening of September 11, 2010, the trio arrived shortly before dark in an area near the Coenens’ home. Walker and the defendant walked around the home for approximately 30 minutes. They saw Mrs. Coenen inside, and discussed how they would get in the home with her present. Deciding to enter through a window, they, duct taped the window and placed pillows on it to muffle the sound of glass breaking. Walker and the defendant also waited for a train to pass to further muffle the sound.
Once inside the home, Walker stated that he looked for jewelry while the defendant looked for Mrs. Coenen. The defendant told Walker that he thought he overheard Mrs. Coenen calling the police, and the men unsuccessfully attempted to exit *802 the home. Upon hearing Mrs. Coenen talking to a police officer in the home, they hid in different closets in a bedroom. Walker stated that he heard the police officer tell the defendant to put his hands up or he would shoot. He then heard several gunshots and |4assumed that the police officer was the shooter because he was unaware that the defendant was armed. Walker left the closet in which he was hiding, and went to hide under the bed. He was eventually discovered during a search of the home.
Walker assisted the officers in capturing Oatis by placing a recorded, controlled call to Oatis to tell him that he made it out of the house and needed him to come back to pick him up.
The defendant was arrested on the morning of September 12, 2010, at approximately 7:00 a.m., at the Parkview Apartments in Monroe, Louisiana. When arrested, the defendant possessed a duffel bag containing clothes that appeared to have been recently washed. A mixture of DNA from Officer Alexander and the defendant was found on a blue T-shirt located in the duffel bag. Officer Alexander’s DNA was also found in the Ford Fusion driven by Oatis, and the .38 caliber Rossi located on Highway 80, across from the Coenens’ home.
Louisiana State Trooper Daniel Grissom arrived at the scene on September 11, 2010, at approximately 10:25 p.m. Officer Grissom spoke with Mrs. Coenen at her home around 2:30 a.m. that night, and later that morning at the office of former district attorney, Billy Coenen. Recalling the events that took place at her home the night before, Mrs. Coenen told Officer Grissom that before she began to run upon Officer Alexander’s urging, she saw a man standing in front of Officer Alexander. After Officer Alexander identified himself as a police officer, the man fired his gun. Mrs. Coenen described the man as a “big man but not as big as Tommy [Officer |,■Alexander].” Further, she stated the man was wearing dark clothes, and did not have much hair. When Officer Grissom asked Mrs. Coenen if she would be able to identify the man in a photographic lineup, she responded, “I doubt it.”
On September 17, 2010, Officer Grissom visited Mrs. Coenen at her home to show her a photographic lineup that consisted of six subjects. Before showing her the lineup, he told her that the subject may or may not be in the lineup. He testified that it took her “less than five seconds” to identify the defendant, whose photo was in position number five, as the suspect. Upon instruction, she circled the defendant’s photograph, and signed and dated it. Mrs. Coenen also wrote, “[H]e jumped out of the closet in front of policeman at my house.” Mrs. Coenen admitted that she asked Grissom if she had selected the right person, but Grissom did not tell her if she had.
On October 12, 2010, the defendant was indicted on one count of first degree murder and one count of conspiracy to commit first degree murder. On November 3, 2010, the defendant entered a plea of not guilty to both charges, and the state served the defendant notice of its intent to seek the death penalty.
At the September 1, 2011, preliminary examination, Mrs. Coenen made a second, in-court identification of the defendant. When questioned about her statement to Officer Grissom that she “doubted” if she could identify the suspect, she explained that she was very upset at the time, but after she had the opportunity to think about the events that transpired that 1 (¡night, she could “see” him. She further testified that she was wearing her contacts that night, and that she was not unusually medicated. She stated that she saw a gun, *803 and that it sounded like a “cap pistol” when it was fired. Over the defendant’s objection, the state introduced into evidence the photographic lineup that was previously presented to Mrs. Coenen. The defendant argued that the format of the lineup violated the Department of Justice’s protocol and policy of how to perform a lineup for photographic identification. The lower court allowed the use of the lineup.
At the November 28, 2012, motion to suppress hearing, Mrs. Coenen again identified the defendant as the suspect. The defendant challenged the reliability of Mrs. Coenen’s identification, arguing that he was unable to verify the protocol, practices used, words spoken, instructions given, persons involved, or whether there was a tentative identification. He further argued that Mrs. Coenen’s change from “doubting” whether she could identify the suspect to immediately picking out the suspect was not trustworthy.
During Officer Grissom’s testimony, he explained how a photographic lineup procedure is conducted. He stated that after a suspect is identified, his photo is retrieved from either a driver’s license database or the APHIS database. The photo is then emailed to a division within the Louisiana State Police, who compiles similar photos to the suspect’s photo and then emails all of the photos back.
The trial court denied the motion to suppress. After stating that the general reason for suppressing a photographic lineup is primarily whether it |7is imper-missibly suggestive, it found that the photographic lineup in this case was not suggestive.
On January 13, 2013, the defendant subsequently withdrew his not guilty plea and pled guilty to first degree murder. He reserved his right to appeal the trial court’s denial of his motion to suppress the sole eyewitness’s identification of the defendant pursuant to State v. Crosby, supra. The state agreed that it woul4 not seek the death penalty, and that it would dismiss the conspiracy to commit first degree murder charge. Pursuant to La. R.S. 14:30(C)(2), the defendant was sentenced to life imprisonment without benefit of probation, parole or suspension of sentence. The defendant appeals, asserting one assignment of error.
LAW AND DISCUSSION

Motion to Suppress

In his pro se brief, as well as the brief submitted by his counsel, the defendant argues that the district court erred in denying his motion to suppress Mrs. Coe-nen’s identification of him through the photographic lineup.
Great discretion is vested in the trial court when ruling on a motion to suppress, and its ruling will not be disturbed on appeal absent an abuse of that discretion. State v. Long, 03-2592 (La.9/9/04), 884 So.2d 1176, cert. denied, 544 U.S. 977, 125 S.Ct. 1860, 161 L.Ed.2d 728 (2005); State v. Horton, 01-2529 (La.6/21/02), 820 So.2d 556.
On the trial of a motion to suppress, the burden of proof is on the defendant to prove the ground of his motion. La. C. Cr. P. art. 703(D). In | ^seeking to suppress an identification, the defendant must prove the identification procedure used was suggestive and that the totality of the circumstances presented a substantial likelihood of misidentification. State v. Martin, 595 So.2d 592 (La.1992); State v. Stokes, 36,212 (La.App.2d Cir.9/18/02), 828 So.2d 631, writ denied, 02-2807 (La.9/05/03), 852 So.2d 1023.
A lineup is unduly suggestive if the procedure used focuses attention on the defendant. For example, distinguishing *804 marks on the photos may single out the accused, or suggestiveness can arise if sufficient resemblance of physical characteristics and features does not reasonably test identification. State v. Sparks, 88-0017 (La.5/11/11), 68 So.3d 435, cert. denied, 80 U.S. 3647, 132 S.Ct. 1794, 182 L.Ed.2d 621 (2012); State v. Stokes, supra.
It is not required that each person whose photograph is used in the lineup have the exact physical characteristics as the defendant. What is required is a sufficient resemblance to reasonably test the identification. State v. Smith, 430 So.2d 31 (La.1983); State v. Davis, 27,961 (La. App.2d Cir.4/8/96), 672 So.2d 428, unit denied, 97-0383 (La.10/31/97) 703 So.2d 12.
The likelihood of misidentification violates due process when the totality of the circumstances indicate that misiden-tification probably occurred. State v. Brown, 40,769 (La.App.2d Cir.3/8/06), 923 So.2d 976, citing Neil v. Biggers, 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972). Even if suggestiveness is proven by the defendant, it is the likelihood of | amisidentification, and not the mere existence of suggestiveness, which violated due process. State v. Williams, 375 So.2d 364 (La.1979); State v. Davis, supra.
The central question is whether under the totality of the circumstances, the identification was reliable even though the confrontation procedure was suggestive. State v. Sparks, supra, citing Neil v. Biggers, supra. Thus, despite the existence of a suggestive pre-trial identification, an in-court identification is permissible if, under all the circumstances, there does not exist a very substantial likelihood of irreparable misidentifieation. Manson v. Brathwaite, 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977). Positive identification by only one witness may be sufficient to support a conviction. State v. Williams, supra; State v. Davis, supra.
The U.S. Supreme Court has approved several factors for evaluating whether the reliability of an identification may outweigh the suggestiveness of the procedures employed. See Manson v. Brathwaite, supra; Neil v. Biggers, supra; State v. Davis, supra. The factors are: (1) the opportunity of the witness to view the criminal at the time of the crime; (2) the witness’s degree of attention; (3) the accuracy of the victim’s prior description of the criminal; (4) the level of certainty demonstrated at the confrontation; and (5) the time between the crime and the confrontation.
In the case sub judice, the defendant argues that his head is the only one “tilted or cocked to the side” in the photographic lineup, and that he is the only suspect in the lineup with any bright color in his photo. In State v. Tucker, 591 So.2d 1208 (La.App. 2d Cir.1991), writ denied, 594 So.2d 1317 (La.1992), this court found that the lineup was not suggestive after determining that even though the defendant was the only subject with his teeth showing, smiling, in his photo, it did not unduly focus attention on the defendant. We do agree that the defendant’s head is slightly tilted; however, his head positioning does not distract or draw attention to his photo in the lineup. Further, the fact that the defendant appears to be wearing a red lanyard of some type around his neck does not “single him out.” In the photo, the defendant appears to be wearing a dark T-shirt, with a white T-shirt underneath, and a red lanyard. The remaining five individuals have collars of various colors. One individual also appears to be wearing a blue lanyard in his photo. For these reasons, we find that the position of the defendant’s head, as well as his red lanyard, do not unduly focus attention to the defendant’s photo or cause suggestiveness to arise.
*805 The six men depicted in the photos share similar characteristics regarding their age, skin tone, build, and facial hair. The photos are identical in size and coloring, and are evenly spaced on the page.
Officer Grissom testified that he either used the defendant’s driver’s license photo, or that he obtained a photo of the defendant from the APHIS. He then e-mailed the photo to a division of the Louisiana State Police in Baton Rouge. This division used the photo of the defendant to identify five other men that closely matched his description, and compiled a photographic lineup. The photographic lineup was emailed back to Grissom, who assessed it to ensure that it was not suggestive.
|n Mrs. Coenen successfully identified the defendant on three separate occasions. She identified him as the suspect from the photographic lineup, in court at the preliminary examination that took place one year later, and in court at the motion to suppress hearing that took place two years later.
Further, we find that the factors set forth by the U.S. Supreme Court for evaluating whether the reliability of an identification may outweigh the ' suggestiveness of the procedures employed with respect to Mrs. Coenen’s identification of the defendant, were satisfied. Just hours after the crime occurred, Mrs. Coenen gave her initial statement to Grissom. She told him that she witnessed a black male wearing dark clothes, with light or little hair, jump out of the closet in the bedroom with a gun in his hand. She also stated that the lights in the bedroom were on, and that she was standing four feet from the suspect.
The defendant argues that the seconds that Mrs. Coenen had to observe the suspect was not enough to time obtain an accurate description, but the evidence proves otherwise. Even though the time that she viewed the suspect was brief, she indicated that she was an “arm’s length” away from him. The bedroom light and hallway light were on, and Mrs. Coenen was wearing her contact lenses, at the time the crime occurred. Mrs. Coenen’s ability to accurately report details regarding the suspect’s appearance to authorities, such as the color of his shirt and the hair on his head, or lack thereof, prove that she gave the suspect an adequate amount of attention.
| i2When Officer Grissom initially interviewed her during the early morning hours on September 12, 2010, she described the suspect as a “big man with dark clothes and not much hair.” The defendant argues that this description does not fit his description. Even though she admitted doubt in her ability to identify the suspect, Mrs. Coenen explained at the September 1, 2011, preliminary examination that she was very upset at the time, but after she had the opportunity to think about the events that transpired that night, she could visualize his appearance. In State v. Prudholm, 446 So.2d 729 (La.1984), the supreme court determined that the victim’s general description at the time of the offense carried little weight considering her state of mind after the crime. Comparable to the instant case, Officer Grissom testified that Mrs. Coenen was visibly upset when he initially interviewed her and gave him a general description. After Mrs. Coenen had the opportunity to think, she gave extensive details that proved to be accurate regarding the suspect. She correctly identified the defendant as not having much hair on his head, as shown by his photo in the photographic lineup. She stated that the defendant’s clothing was dark, and the authorities were subsequently able to recover a blue T-shirt in his possession at the time of his arrest that contained Officer Alexander’s DNA. Though Mrs. Coenen was unable to provide a detailed description of the handgun used, she was able to report that the sus *806 pect was holding a small, dark handgun in his right hand. Her description matched the handgun that was recovered on Highway 80 across from her home. This very gun contained Officer Alexander’s DNA.
liSSix days after the crime occurred, Grissom presented the lineup to Mrs. Coe-nen in her home, and informed her that the suspect may or may not be in the lineup. Without being prompted, she was able to accurately identify the defendant in the lineup in a matter of seconds. She never paused or showed interest in any of the other suspects in the lineup. Mrs. Coenen testified that prior to viewing the photographic lineup, she had not been shown any photographs of the defendant by any family member, law enforcement official, or through the media. Moreover, Mrs. Coenen repeatedly stated in her testimony during both the preliminary examination and the motion to suppress hearing that she had no doubt that she chose the correct suspect, and that she did so without being prompted, coached, or influenced by other means.
Based on the evidence presented, we agree with the lower court’s determination that the defendant failed to show that the lineup was unduly suggestive, or that it created a substantial likelihood of mis-identification. Further, Mrs. Coenen’s testimony, coupled with her accurate description of the defendant, supports her identification of the defendant as the suspect. Therefore, this assignment of error lacks merit.
CONCLUSION
For the foregoing reasons, the defendant’s conviction and sentence are affirmed.
AFFIRMED.