Judgment rendered December 17, 2025.
Application for rehearing may be filed
within the delay allowed by Art. 922,
La. C. Cr. P.

No. 56,701-KA

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

STATE OF LOUISIANA                          Appellee

versus

KEATRE MONIQUE DANIELS                      Appellant

* * * * *

Appealed from the
First Judicial District Court for the
Parish of Caddo, Louisiana
Trial Court No. 398,529

Honorable Christopher T. Victory, Judge

* * * * *

LOUISIANA APPEALS AND WRIT SERVICE      Counsel for Appellant
By: Remy V. Starns
    Michael A. Mitchell
    Corrie R. Gallien

JAMES E. STEWART, SR.                    Counsel for Appellee
District Attorney

COURTNEY N. RAY
ALEXANDRA L. PORUBSKY
Assistant District Attorneys

* * * * *

Before STEPHENS, THOMPSON, and ELLENDER, JJ.

**ELLENDER, J.**

Keatre Daniels appeals her convictions of possession of a firearm or carrying a concealed weapon by a convicted felon, illegal use of weapons or dangerous instrumentalities, and aggravated second degree battery, and her consecutive sentences totaling 37 years at hard labor. Daniels argues a single photo identification was unduly suggestive, the evidence was insufficient to support her convictions, and the sentences imposed are excessive. Finding no merit to her claims, we affirm.

## FACTUAL BACKGROUND

On the morning of June 27, 2023, police responded to a 911 call about a shooting in the 200 block of East Egan Street, in Shreveport's Highland neighborhood. Shreveport Police Department ("SPD") Detective Hunter DeLoach arrived to find a white male shot in the driveway at 207 E. Egan. The detective talked to a neighbor, Ann Stewart, who lived across the street. Stewart told him she was familiar with her neighbor at 201 E. Egan, who had fled the scene in a red Nissan Altima. Det. DeLoach got a search warrant for 201 E. Egan and confirmed it was where Keatre Daniels lived.

Around the same time, SPD Corporal Briceno came to the scene and found the victim, who had been shot in both shins in front of a house at 207 E. Egan; the victim did not give his name, but said he was homeless. Cpl. Briceno also spoke to the witness, Stewart, who gave him a "coherent" statement in the back of his patrol car.[1]

---

[1] Cpl. Briceno testified that the statement was recorded on his backseat MVS, he had reviewed the recording, and it was unaltered; he identified a CD containing the recording; and the prosecutor marked this as Exhibit S-1. However, S-1 was not introduced in evidence and not played for the jury.

Stewart testified she saw "part" of the incident: the man was leaving the next-door neighbor's house, when a lady came out and accused him of scratching her car; an argument ensued, and the lady shot him in both legs. Stewart did not know the shooter's name but recognized her because she had lived next door for about a year. Stewart clarified she had not seen the actual shooting; she went inside when the shouting started, but there was nobody else in the yard except the victim and the shooter.

On cross-examination, Stewart reiterated she did not know Daniels's name but had seen her almost daily and recognized her. She also testified the police showed her one photo, which she recognized as the shooter. Stewart said the victim was obviously high on drugs and she, Stewart, was taking certain medications that day, Gabapentin and Xanax, that slightly affected her memory, but she was not heavily sedated at the time.

Knowing the shooter's name and address, Det. DeLoach got Daniels's driver's license picture from SPD's Record Management System. An officer (he was not certain which one) showed it to Stewart, who confirmed that Daniels was the person who shot the victim.

Officers obtained an arrest warrant for Daniels the following day. She eventually surrendered to police in November 2023 and was billed with (1) possession of a firearm or carrying an illegal weapon by a convicted felon, R.S. 14:95.1, (2) illegal use of weapons or dangerous instrumentalities, R.S. 14:94, and (3) aggravated second degree battery, R.S. 14:34.7.

## PROCEDURAL HISTORY AND TRIAL

Through appointed counsel, Daniels filed a motion in limine to "prohibit introduction of any unfavorable evidence" against her. She specifically argued the use of a single photo, instead of a standard lineup of

2

six, was unduly suggestive and tainted the identification. At a hearing the day before trial, the state argued the procedure was appropriate because the witness, Stewart, knew the suspect and could identify her. Daniels argued that Stewart later signed an affidavit stating she did not know who shot the victim but did not offer it in evidence. The district court stated the affidavit concerned the weight of the identification, not its admissibility. The court admitted the single-photo identification.

The matter came to trial, before a 12-member jury, in January 2025. The witnesses testified as outlined above. Det. DeLoach was clear he responded to the call at 10:06 am; however, Stewart, on cross-examination, said the incident occurred in the afternoon, "I do believe." She later clarified that it was "during daytime."

On direct exam, Stewart was shown the affidavit purportedly signed by her and stating, "I don't want to do this." Stewart said it was not her signature, and she had never seen the document before.[2]

The victim, Paul George, admitted he was currently in Caddo Correctional Center on a drug charge and had prior convictions for forgery and simple burglary. He was "seeing somebody on Egan Street," standing in the front yard, when he heard two women arguing; they came out of the house and one of them yelled at him, "You better not be messing with my car." He yelled back, "Nobody's messing with your car." The women then went back inside; two minutes later, one of them came back out, pointed a gun at him, and fired eight or nine shots, two of which hit his legs. The shooter then hopped into a car and drove off; he soon passed out and

_____

[2] The prosecutor marked the affidavit as Exhibit S-3 but did not introduce it in evidence.

3

remembered nothing else about the incident. George had never met the shooter before. On cross, he admitted he might have been smoking pot that day, but he insisted he had no drug problems until after being badly injured in this incident. He identified Daniels in open court as the shooter but admitted he had never done so until the date of trial. Other than George's own testimony, the state offered no additional evidence as to the extent of his injuries or treatment.

Det. DeLoach, the lead detective, admitted on cross that the search of Daniels's house merely confirmed that she lived there. Police never located the red Nissan Altima, any gun or bullets, DNA evidence, or surveillance video of the event.

The state's final witness was SPD Corporal Amber Futch, an expert in fingerprint comparison and identification. She confirmed the prints of Daniels taken in open court matched those of a defendant named Keatre Daniels who was convicted of kidnapping in 2014.

Daniels elected not to testify. She called one witness, SPD Officer Ryan Dailey, who testified that about three weeks before this incident, he had investigated a shooting at 201 E. Egan St., and arrested a black female named Latia Salone who had confronted a black male in her driveway and fired a "warning shot" into the ground. He described that arrestee as a black female, age 28, 5'5", with black hair and brown eyes, a description similar to Daniels. On cross, he admitted that suspect had been arrested weeks before this shooting, and police had found the gun that suspect used.

After 87 minutes' deliberation, the jury found Daniels guilty as charged on all three counts. The defense asked for a presentence

4

investigation report ("PSI").  Daniels also filed motions for new trial and post verdict judgment of acquittal, which were denied.

At the sentencing hearing, in March 2025, the district court listed three incarceration factors under La. C. Cr. P. art. 894.1 (A) and four aggravating factors under Art. 894.1 (B).  It then recounted Daniels's criminal history, including three prior felony convictions (one committed while on probation) and seven misdemeanors.  The court found no mitigating factors.  It then stated it applied the factors for consecutive sentences under *State v. Gant*, 54,837 (La. App. 2 Cir. 1/11/23), 352 So. 3d 824, and found all applied.  It sentenced her to 20 years at hard labor, without benefits, for possession of a firearm or a concealed weapon by a convicted felon; two years at hard labor for illegal use of weapons; and 15 years at hard labor for aggravated second degree battery; and ordered all sentences to be consecutive, for a total of 37 years.  Owing to Daniels's indigency, it waived all fines.

Daniels appealed raising three assignments of error.

## DISCUSSION

### *Single-Photo Identification*

By her first assignment of error, Daniels urges the court erred in denying her motion in limine to prohibit the use of a suggestive photo lineup identification.  A lineup is unduly suggestive, she shows, if it focuses attention on the defendant, *State v. Long*, 49,398 (La. App. 2 Cir. 12/17/14), 154 So. 3d 799, *writ denied*, 14-2079 (La. 5/1/15), 173 So. 3d 1166.  Various factors are reviewed to assess the reliability of an identification: (1) the opportunity of the witness to view the criminal at the time of the crime, (2) the witness's degree of attention, (3) the accuracy of his or her prior

5

description of the criminal, (4) the level of certainty demonstrated at the confrontation, and (5) the length of time between the crime and the confrontation. *Manson v. Brathwaite*, 432 U.S. 98, 97 S. Ct. 2243 (1977). She concedes that courts recognize a one-on-one identification, called a "show-up," is permissible in certain circumstances, *State in Interest of MB*, 16-0819 (La. App. 4 Cir. 4/19/17), 217 So. 3d 555. She contends, however, that "single photo lineups are not" and the procedure used with Stewart, showing her a single photo of the defendant, instead of a standard lineup of six, was "highly inappropriate and highly suggestive," increasing the likelihood of an erroneous identification. She also argues that Stewart did not even remember how many pictures the police showed her, further compromising the process.

To suppress an identification, the defendant must prove the procedure used was suggestive and that the totality of the circumstances presented a substantial likelihood of misidentification. *State v. Sparks*, 88-0017 (La. 5/11/11), 68 So. 3d 435, *cert. denied*, 566 U.S. 908, 132 S. Ct. 1794 (2012); *State v. Johnson*, 50,234 (La. App. 2 Cir. 11/18/15), 182 So. 3d 1039, *writ denied*, 15-2242 (La. 3/24/16), 190 So. 3d 1190. Louisiana courts apply the *Manson v. Brathwaite* factors to assess the reliability of an identification. *State v. Brown*, 03-0897 (La. 4/12/05), 907 So. 2d 1, *cert. denied*, 547 U.S. 1022, 126 S. Ct. 1569 (2006); *State v. Johnson*, *supra*. It is not the mere existence of suggestiveness which violates due process; rather, it is the likelihood of misidentification. *State v. Williams*, 375 So. 2d 364 (La. 1979); *State v. Sparks*, *supra*.

Identifications arising from a single photograph may be viewed in general with suspicion. *State v. Sparks*, *supra*; *State v. Johnson*, *supra*.

However, the suggestive nature of this process does not automatically preclude admissibility unless the process is found to be untrustworthy under the totality of the circumstances. *State v. Harper*, 93-2682 (La. 1993), 646 So. 2d 338; *State v. Johnson, supra*. The central question is whether, under the totality of the circumstances, the identification was reliable even though the confrontation procedure was suggestive. *State v. Sparks, supra*.

Contrary to Daniels's argument in brief, this court and others have routinely upheld one-photograph identifications when the identifying witness or victim was familiar with the accused. *State v. Whitaker*, 56,295 (La. App. 2 Cir. 5/21/25), 413 So. 3d 553; *State v. Johnson, supra*; *State v. Miller*, 561 So. 2d 892 (La. App. 2 Cir.), *writ denied*, 566 So. 2d 983 (1990); *State v. Guillory*, 10-1175 (La. App. 3 Cir. 4/6/11), 61 So. 3d 801; *State v. Hudson*, 19-0761 (La. App. 4 Cir. 4/22/20), 299 So. 3d 131. In *State v. Hudson, supra*, the Fourth Circuit accepted the testimony of a police detective:

> Det. Hogan testified that there are three procedures used for identification: confirmation photo; six-pack photo line-up; and show-up identification on the scene. She elected to do a confirmation photo since the victim and Ms. Alonso stated that they had known the defendant for some time and saw him regularly.

*Id.* at fn 2, 299 So. 3d at 134.

Similarly, Det. DeLoach testified a six-person photographic lineup is used only in cases where the victim or witness does not know the suspect – in that event, the purpose of the lineup is to obtain unbiased recognition. When the witness is already familiar with the suspect, he testified, a photo array is not generated; rather, a single photo of the suspect is obtained and presented to the witness. In short, the procedure used here comports with standard practice when the witness knows the suspect.

7

Applying the *Manson* factors, we find Stewart exhibited a high level of certainty that the person on the picture, Daniels, was the shooter, as Daniels had lived next door for a year and Stewart had seen her almost daily during this time; Stewart had a reasonable opportunity to see who the shooter was, at the time of the crime; and the identification was made shortly after the crime. The district court did not abuse its discretion in denying Daniels's motion to suppress the photo identification. This assignment of error lacks merit.

### Sufficiency of the Evidence

By her second assignment of error, Daniels urges the court erred in denying her motions for new trial and judgment of acquittal, as the evidence was insufficient to support the verdicts beyond a reasonable doubt. She cites the standard of appellate review, *Jackson v. Virginia*, 443 U.S. 307, 99 S. Ct. 2781 (1979), the presumption of innocence, *State v. Thompson*, 15-0886 (La. 9/18/17), 233 So. 3d 529, and the rule of circumstantial evidence, *State v. Mussall*, 523 So. 2d 1305 (La. 1988). She contends the state's case was entirely circumstantial: the photographic lineup was highly suggestive and improper; the witness admitted she was taking medications that impaired her memory; she misremembered what time of day the shooting occurred; she did not see Daniels shoot the victim, or see a gun in Daniels's hand; the victim gave contradictory testimony, first stating he was not under the influence of any substances, but then admitting he may have smoked pot that day; he did not identify Daniels by name; there was no surveillance video, DNA, or fingerprints linking Daniels to the crime; the gun and red Nissan Altima she used were never recovered. Given these deficiencies, she

8

submits, the evidence does not exclude the reasonable hypothesis of innocence.

The standard of appellate review for a sufficiency of the evidence claim in a criminal case is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia, supra*; *State v. Tate*, 01-1658 (La. 5/20/03), 851 So. 2d 921, *cert. denied*, 541 U.S. 905, 124 S. Ct. 1604 (2004). The *Jackson* standard, now legislatively embodied in La. C. Cr. P. art. 821, does not provide the appellate court with a means to substitute its own appreciation of the evidence for that of the fact finder. *State v. Pigford*, 05-0477 (La. 2/22/06), 922 So. 2d 517; *State v. Galloway*, 55,591 (La. App. 2 Cir. 4/10/24), 384 So. 3d 1167.

The *Jackson* standard also applies in cases involving both direct and circumstantial evidence. An appellate court reviewing the sufficiency of the evidence in such cases must resolve any conflict in the direct evidence by viewing that evidence in the light most favorable to the prosecution. When the direct evidence is viewed as such, the facts established by the direct evidence and inferred from the circumstances established by that evidence must be sufficient for a rational trier of fact to conclude beyond a reasonable doubt that the defendant was guilty of every essential element of the crime. *State v. Sutton*, 436 So. 2d 471 (La. 1983); *State v. Galloway, supra*.

Likewise, if a case rests essentially on circumstantial evidence, that evidence must exclude every reasonable hypothesis of innocence. La. R.S. 15:438. The appellate court will review the evidence in the light most favorable to the prosecution and determine whether an alternative hypothesis

9

is sufficiently reasonable that a rational juror could not have found proof of guilt beyond a reasonable doubt. *State v. Calloway*, 07-2306 (La. 1/21/09), 1 So. 3d 417; *State v. Galloway*, *supra*.

Where there is conflicting testimony concerning factual matters, the resolution of which depends on a determination of the credibility of the witnesses, the matter is of the weight of the evidence, not its sufficiency. *Tibbs v. Florida*, 457 U.S. 31, 102 S. Ct. 2211 (1982); *State v. Galloway*, *supra*. The appellate court neither assesses the credibility of witnesses nor weighs evidence. *State v. Kelly*, 15-0484 (La. 6/29/16), 195 So. 3d 449; *State v. Galloway*, *supra*. Rather, the reviewing court affords great deference to the jury's decision to accept or reject the testimony of a witness in whole or in part. *State v. Robinson*, 02-1869 (La. 4/14/04), 874 So. 2d 66, *cert. denied*, 543 U.S. 1023, 125 S. Ct. 658 (2004); *State v. Galloway*, *supra*.

In a case where a defendant claims he was not the person who committed the offense, the *Jackson* standard requires the prosecution to negate any reasonable probability of misidentification. *State v. Young*, 20-01041 (La. 5/13/21), 320 So. 3d 356; *State v. Galloway*, *supra*.

Daniels does not seriously contest the sufficiency of the evidence as to any specific element of the charged offenses; rather, she contends the evidence that *she* was the shooter was entirely circumstantial and, under the *Jackson* standard, does not support a finding that *she* shot George. Her major premise, of course, is that the photographic identification by Stewart was suggestive and improper, but this court has already found it met the standard of reliability under *Manson v. Brathwaite*, *supra*. The remaining issue, then, is whether the jury was reasonable to accept Stewart's identification of Daniels as the shooter. Like any witness, Stewart's

10

recollection of the incident was not impeccable or totally consistent: she admitted taking Gabapentin, a pain and epilepsy medication, and Xanax, a tranquilizer, drugs that slightly affected her memory; at one point, she testified the shooting occurred in the afternoon, while the police evidence showed it was slightly after 10 am; and she admitted she did not see the actual shooting. However, despite her medicated state, she was certain about what she saw: Daniels had threatened the victim over scratching her red Nissan, and when she (Stewart) went inside, Daniels and the victim were the only two people standing in the yard, and she reiterated that the event happened "during daytime." This court also notes that somebody tendered an "affidavit" in which Stewart purported to retract her photographic identification of Daniels and to proclaim she did not want to testify. Stewart denied any knowledge of this, insisted she did not execute or sign it; neither the state nor the defense offered it in evidence. Despite the crude attempt to impugn her credibility, the jury obviously accepted Stewart's account of the event and identification of the defendant.

This court recognizes the various credibility issues with the victim, George, but finds that his account of the interchange with Daniels before the shooting is close enough to Stewart's that a rational factfinder could have credited it. Despite his drugged state at the time, the jury could accept his recollection of being threatened and then shot by the defendant. The likelihood of error in these circumstances seems minor.

Finally, we note the absence of physical evidence connecting Daniels to the crime, and the suggestion, through Ofc. Dailey's testimony, that somebody else in the neighborhood might have shot George. Given the rest

11

of the evidence, we do not find these arguments rise to the status of reasonable doubt.

For the sake of completeness, we have also reviewed the record for evidence as to each element of the offenses. Under R.S. 14:95.1 (A)(1), it is unlawful for any person who has been convicted of a crime of violence as defined by R.S. 14:2 (B) which is a felony, to possess a firearm or carry a concealed weapon. Cpl. Futch established that the fingerprint taken from Daniels in open court matched that of a defendant named Keatre Daniels who was convicted of second degree kidnaping in 2014; that offense is a crime of violence, La. R.S. 14:2 (B)(16); George testified that Daniels pointed a gun at him and then shot him multiple times; Stewart testified that after hearing Daniels argue with George, she heard shots fired, saw George injured, and there was nobody else in the yard who might have fired them. This satisfies the essential elements of possession of a firearm or carrying a concealed weapon by a person convicted of certain felonies.

Under R.S. 14:94 (A), illegal use of weapons or dangerous instrumentalities is the intentional or criminally negligent discharging of any firearm where it is foreseeable that it may result in death or great bodily harm to a human being. The testimony of George and Stewart established that Daniels intentionally or criminally negligently fired a gun where it was foreseeable that George might be killed or seriously injured. This satisfies the essential elements of the crime.

Under R.S. 14:34.7 (A), aggravated second degree battery is a battery committed with a dangerous weapon when the offender intentionally inflicts serious bodily injury; under R.S. 14:33, battery is defined as the intentional use of force or violence upon the person of another. The essential elements,

12

therefore, are (1) the intentional use of force or violence upon the person of another, (2) use of a dangerous weapon, (3) without the consent of the victim, and (4) the offender's specific intent to inflict serious bodily injury. *State v. Clanton*, 19-0316 (La. App. 4 Cir. 11/6/19), 285 So. 3d 31. The testimony of George and Daniels satisfied each element beyond a reasonable doubt. This assignment of error lacks merit.

### *Excessive Sentences*

By her third assignment of error, Daniels urges the court imposed an unconstitutionally excessive sentence. She cites the constitutional guarantees against excessive punishment, U.S. Const. Amend. 8, and La. Const. art. I, § 20, and the appellate standard of abuse of discretion, *State v. Johnson*, 97-1906 (La. 3/4/98), 709 So. 2d 672. As she faced three separate charges, she concedes it is difficult to find truly similar appellate decisions. However, she argues the state made no showing that her conduct was premeditated or that the injury to the victim was severe. She submits the total sentence of 37 years was a purposeless imposition of pain and suffering and should be vacated.

Appellate review of sentences for excessiveness is a two-prong inquiry. First, the court must find that the sentencing court took cognizance of the criteria set forth in La. C. Cr. P. art. 894.1. The sentencing court is not required to list every aggravating or mitigating circumstance, so long as it adequately considered them in particularizing the sentence to the defendant. *State v. Smith*, 433 So. 2d 688 (La. 1983). The goal of Art. 894.1 is to articulate an adequate factual basis for the sentence, not to achieve rigid or mechanical compliance with its provisions. *State v. Lanclos*, 419 So. 2d 475 (La. 1982).

13

This record shows a thorough and exemplary compliance with Art. 894.1. The court made explicit findings as to all three incarceration factors of Art. 894.1 (A) and four of the aggravating factors of Art. 894.1 (B), particularly Daniels's criminal history. With a record stretching back to 2010, Daniels had convictions for simple kidnaping (pled down from second degree kidnaping), attempted felon in possession of a firearm (pled down from the completed offense), and felony-grade unauthorized use of a motor vehicle (with facts involving possession of a firearm or carrying a concealed weapon by a convicted felon). The PSI confirms that all her convictions have involved the use of a firearm. We find no deficiency in the court's compliance with Art. 894.1.

The second prong is a review for constitutional excessiveness. A sentence violates La. Const. art. I, § 20, if it is grossly out of proportion to the seriousness of the offense or nothing more than a purposeless and needless infliction of pain and suffering. *State v. Dorthey*, 623 So. 2d 1276 (La. 1993). A sentence is deemed grossly disproportionate if, when crime and punishment are viewed in light of the harm done to society, it shocks the sense of justice. *State v. Weaver*, 01-0467 (La. 1/15/02), 805 So. 2d 166. The sentencing court has wide discretion in imposing a sentence within statutory limits, and such a sentence will not be set aside as excessive in the absence of manifest abuse of that discretion. *State v. Williams*, 03-3514 (La. 12/13/04), 893 So. 2d 7. As a general rule, maximum or near-maximum sentences are reserved for the worst offenders and the worst offenses. *State v. Cozzetto*, 07-2013 (La. 2/15/08), 974 So. 2d 665.

For possession of a firearm or carrying a concealed weapon by a person convicted of certain felonies, the sentencing range is not less than

14

five nor more than 20 years at hard labor, without benefits. La. R.S. 14:95.1 (B)(1). For illegal use of weapons or dangerous instrumentalities, the sentencing range is imprisonment with or without hard labor for not more than two years. La. R.S. 14:94 (B). For aggravated second degree battery, the sentencing range is imprisonment with or without hard labor for not more than 15 years. R.S. 14:34.7 (C). The district court obviously imposed the maximum for each offense. However, in light of Daniels's troubling criminal history and apparent proclivity for violent events involving automobiles and firearms, we cannot say the sentencing choice shocks the sense of justice.

Although the issue is not specifically raised in brief, this court has also considered whether the district court's decision to run all sentences consecutively was an abuse of discretion. The rule of concurrent sentences is stated in La. C. Cr. P. art. 883, which states, in pertinent part:

> If the defendant is convicted of two or more offenses based on the same act or transaction, or constituting parts of a common scheme or plan, the terms of imprisonment shall be served concurrently unless the court expressly directs that some or all be served consecutively.

It is within the trial court's discretion to make sentences consecutive rather than concurrent. *State v. Green*, 16-0107 (La. 6/29/17), 225 So. 3d 1033; *State v. Gant*, *supra*. When consecutive sentences are imposed, the court shall state the factors considered and its reasons for consecutive terms. Among the factors to be considered are the defendant's criminal history, the gravity or dangerousness of the offense, the viciousness of the crimes, the harm done to the victims, whether the defendant constitutes an unusual risk of danger to the public, the potential for defendant's rehabilitation, and whether the defendant has received a benefit from a plea bargain. *State v.*

*Gant, supra*. A judgment directing that sentences arising from a single course of conduct be served consecutively requires a particular justification from the evidence of record. *Id*. The district court's failure to make such a finding will result in a remand. *Id*.; *State v. Ned*, 56,447 (La. App. 2 Cir. 10/1/25), __ So. 3d __.

On close review, we find the district court expressly directed that all sentences be served consecutively, as required by Art. 883, and adequately provided a particular justification from the evidence of record, as required by *State v. Gant, supra*. The court cited Daniels's criminal history, the gravity of the offense, and the unusual risk of danger she posed to the public. Although the aggregate sentences are long, we cannot say the district court's concerns were unfounded. We perceive no abuse of discretion. This assignment of error lacks merit.

## CONCLUSION

For the reasons expressed, we affirm Keatre Monique Daniels's conviction on all three counts, as well as her individual and aggregate sentences of 37 years at hard labor.

AFFIRMED.